# Caldwell *v.* Pollak.

*Statutory Action in nature of Ejectment.*

1. *Possession as evidence of title.*—Continuous possession of land for several years raises a presumption of title, in the absence of countervailing evidence.

2. *Levy of execution after death of defendant.*—Under statutory provisions (Code §§ 2894–7,) if an execution is in the hands of the sheriff at the death of the defendant therein, he may levy and sell under it afterwards.

3. *Homestead exemption; extent of estate; sale and conveyance.*—A homestead exemption is only a life-estate, unless the owner leaves a surviving widow or a minor child or children (Code, § 2507); and when his claim has been rightfully interposed, an execution in the hands of the sheriff is not a lien on the property, neither the life-estate nor the remainder, and he may sell and convey the entire property; but the conveyance of the fee may be attacked by creditors on the ground of fraud.

4. *Change of domicil.*—A domicil once acquired is presumed to continue until a change *facto et animo* is shown—until another is acquired by actual residence with the intention of abandoning the former one; and the *onus* of proving such a change lies on him who asserts it.

| | |
|---|---|
| 91 | 353 |
| 91 | 537 |
| 92 | 553 |
| 91 | 353 |
| 94 | 150 |
| 91 | 353 |
| 98 | 265 |
| 91 | 353 |
| 100 | 206 |
| 100 | 464 |
| 91 | 353 |
| 106 | 449 |
| 91 | 353 |
| 115 | 459 |
| 91 | 353 |
| 121 | 103 |
| 91 | 353 |
| 132 | 356 |
| 132 | 605 |

[Caldwell v. Pollak.]

5. *Burden of proof as to consideration of conveyance.*—As against an existing creditor, whose debt was reduced to judgment before the execution of a conveyance by his debtor, the *onus* is on the grantee to prove the payment of a sufficient, valuable consideration.

6. *Unrecorded deed; statutory protection to creditors and purchasers without notice.*—As against subsequent purchasers and judgment creditors without notice, an unrecorded deed is inoperative and vo'd (Code, §§ 1810–11); and possession, acquired or held under it, does not charge them with constructive notice, unless there is an actual, visible change of possession.

7. *Proof of deed.*—A deed is not self-proving, or admissible in evidence without proof of execution, unless it has been recorded within the time prescribed by law (Code, § 1798; Sess. Acts 1888–9, p. 41); but the testimony of a witness, "that the subscribing witnesses reside out of the State, and that their signatures to the deed are genuine," is sufficient to admit it as evidence.

8. *Admissibility of deed as evidence.*—A deed conveying the land sued for to the defendant is admissible as evidence for him, in the first instance, on proof of its execution only, although the *onus* may be on him to prove its consideration as a part of his case, and the deed may afterwards be excluded if that proof is not adduced.

APPEAL from the Circuit Court of Macon.

Tried before the Hon. JOHN MOORE.

This action was brought by Ignatius Pollak, against J. W. Echols, to recover a house and lot in Tuskegee, particularly described in the complaint; and was commenced on the 22d of February, 1890. W. P. Caldwell, the landlord of Echols, intervened, and defended the suit on his own title. The plaintiff asserted title to the property as purchaser at sheriff's sale under execution against Mrs. Amanda M. Kelly, on a judgment in favor of Pollak & Co.; and he introduced in evidence said judgment, the executions thereon, and the sheriff's deed, as fully stated in the opinion of the court. The sheriff who made the levy and sale testified, "that said house was not occupied by any one at the time of the levy." Mr. Bilbro, a witness for plaintiff, "testified in substance, that he has lived here forty-eight years, and knows the house and lot called the Kelly place; that Mrs. A. M. Kelly (after Mr. Kelly's death) for many years resided on, occupied and controlled said house and lot before her death, which occurred in January, 1889; that she rented out a part of the house at different times, and once in 1888; that W. P. Caldwell lived in the house with her; that he was a boy raised here, but left about the year 1879; and that he has made occasional visits to the place since, the last visit being three or four years ago. Mr. Motley, another witness, testified in substance, that he knows said house and lot, and has known it for many years; that Mrs. Kelly occupied and controlled it, for four, five or six years past; that said Caldwell lived with her, and grew up there, and that he was about grown when he left Tuskegee many years ago. It was

[Caldwell v. Pollak.]

proved by plaintiff, also, that Mrs. Kelly left Tuskegee, and went to Georgia, in October or November, 1888." It was admitted, also, that J. W. Echols was in possession at the commencement of the suit.

The defendant then offered in evidence the first execution issued on the plaintiff's judgment, with the levy and other indorsements thereon, showing that Mrs. Kelly interposed a claim of exemption to the property as her homestead, and that the claim was not contested; and he also offered the affidavit and claim of exemption. "Mr. Brewer, a witness for the defendant, then testified, in substance, that he, as the agent of said Caldwell, took possession of said house and lot in October, or November, 1888, by locking up the house, and taking the keys; that he had the keys when the sheriff levied on the property; that he forbade the sale as agent for said Caldwell, and announced that Mrs. Kelly had no interest in the property, and that Caldwell owned it." The defendant then offered in evidence the deed from Mrs. Kelly to himself, which is described in the opinion of the court, "after having proved by said Brewer that the subscribing witness[es] resided out of this State, and that the signatures thereto as subscribing witnesses were their genuine signatures." On objection by plaintiff, the court excluded the deed as evidence, and the defendant excepted. This being "the substance of all the evidence," the court charged the jury, on request, that they must find for the plaintiff, if they believed the evidence. The defendant excepted to this charge, and he here assigns it as error, together with the exclusion of his deed as evidence.

WATTS & SON, for appellant, cited *Bank v. Kinsey*, 5 Ala. 9; *Masterson v. Gibson*, 56 Ala. 56; cases in 1 Brick. Digest, 809, §§ 79–82.

W. F. FOSTER, *contra*, cited *Wood v. Lake*, 62 Ala. 489; *Chadwick v. Carson*, 78 Ala. 116; *King v. Paulk*, 85 Ala. 186; *Troy v. Walter*, 87 Ala. 233; *Fellows v. Lewis*, 65 Ala. 343; *Blum v. Carter*, 63 Ala. 235; *McGuire v. Van Pelt*, 55 Ala. 344; *Miller v. Marx*, 55 Ala. 322.

STONE, C. J.—In 1881, Pollak & Co. recovered a judgment against Amanda M. Kelly in the Circuit Court of Macon county. Execution was issued on this judgment, and placed in the hands of the sheriff of that county in less than a month after the judgment was rendered; and other executions were issued and placed in the hands of the sheriff every year, with the exception of the year 1882, up to and including 1888. Com-

[Caldwell v. Pollak.]

mencing with July, 1883, executions were continually in the hands of the sheriff, until the lot in controversy was sold by him, as after mentioned; and this, without the lapse of an entire term.—Code of 1886, § 2894.

Under the execution issued September 26, 1888, the sheriff, on February 2, 1889, levied on the lot sued for in this action, but did not sell for want of time to advertise and make the sale. He so indorsed his return on the execution. On April 2, 1889, another execution was issued, by virtue of which the sheriff renewed his levy on the lot, advertised it for sale, and on May 13, 1889, he sold it to the highest bidder, and Pollak, the appellee, became the purchaser, and received the sheriff's deed. It was shown that Mrs. Kelly resided on the lot, for ten years before Pollak & Co. recovered their said judgment, and that she continued to so reside until the Fall of 1888. At the date last mentioned, she went to the State of Georgia; but whether with the intention of thereby changing her residence, is not expressly shown. She died in January, 1889. This is the plaintiff's chain of title.

The continuous possession of Mrs. Kelly, running as the testimony shows it did for several years, raised the presumption of title in her, in the absence of countervailing proof.—1 Brick. Dig. 627, §§ 40, 41; *Anderson v. Melear*, 56 Ala. 621. And if the lien attached during the life-time of Mrs. Kelly, her death did not impair it, or destroy the effect of the sale, there being no lapse of a term between the executions.—Code of 1886, § 2897; 3 Brick. Dig. 451–2, §§ 39, 48, 49. The plaintiff made a *prima facie* case for recovery.

Under the first execution issued on the judgment against Mrs. Kelly, the lot in controversy was levied on. She interposed a claim of homestead exemption, and there being no contest of her claim, as provided by statute—Code of 1886, § 2521—the levy was discharged. All other executions issued afterwards were returned "no property found," until the execution issued in September, 1888. That execution was in the hands of the sheriff when Mrs. Kelly died—January, 1889—and, as we have shown, was levied on the lot in February, 1889.

Our exemption of the homestead from levy and sale under execution, is during the life of the exemptioner, and no longer, unless there be a surviving wife or minor child or children, one or both. The defendant in execution, in the case before us, was a woman, and it is not claimed that she left a minor child surviving her. It follows that her claim of exemption was only a life-estate, and expired with her.—Code of 1886, § 2507, and note.

A homestead exemption, actually and rightly interposed, has

[Caldwell v. Pollak.]

the effect in law of dividing the freehold into two *quasi*-owner-ships, the one for life, and the other in remainder. The first, or life-ownership, unless forfeited by abandonment of the pos-session, is as much beyond the influence of the execution, as if it was the property of a stranger. Execution in the hands of a sheriff fastens no lien on property so held, either on the life-estate, or on the remainder. . The exemptioner may sell the fee of property so held, and vest a good title in the pur-chaser, to the same extent, and with the same limitations on his power of disposition, as would be the case if his debt was not in execution—was not reduced to judgment. He may sell the entire property for a valuable consideration, if there is no fraud, actual or constructive, in the transaction, and the execution creditor, in assailing it, would occupy no vantage-ground by virtue thereof. And as to the life-estate, if he has not forfeited it by abandoning the possession, he may dispose of it at his pleasure, with or without consideration, and his creditors can not be heard to complain of this. It would not take from them any right the law gives them.—*Fellows v. Lewis*, 65 Ala. 343; *Wright v. Smith*, 66 Ala. 514; *Lehman v. Bryan*, 67 Ala. 558; 3 Brick. Dig. 494, *et seq.*

Applying the foregoing principles to the facts of this case, Pollak & Co. could claim no advantage as springing out of their judgment and execution, until the expiration of Mrs. Kelly's homestead exemption, whether caused by her death, or by abandonment. If the homestead right continued until her death, then the execution became *functus* as to the house and lot, and as to all other property on which no lien had attached during her life-time. There being no lien during her life-time, it could not accrue afterwards.—Code, § 2897.

It is shown, as we have previously said, that Mrs. Kelly left the premises in the Fall of 1888. She did not return, so far as the record informs us. She died in January, 1889. Upon the undisputed facts in this record, we may safely affirm that the premises sued for were unquestionably the domicil—the homestead of Mrs. Kelly—at least, until she left the premises in the Fall of 1888. A domicil once acquired is presumed to continue until a change, *facto et animo*, is shown. It is pre-sumed to continue, until another is acquired by actual resi-dence with the intention of abandoning the former one. And the burden of proof lies on the party who asserts the change. 5 Amer. & Eng. Encyc. of Law, 865. Unless Pollak, the plain-tiff below, satisfied the jury by the testimony that Mrs. Kelly, by leaving the premises, did not intend to return, but in fact and in intent abandoned the possession with no intention of returning and resuming possession and occupancy, then he

failed to show that the execution of Pollak & Co. ever acquired a lien on the property—failed to show a valid levy or sale, and failed to show any right to recover.

To summarize : If it be not shown that Mrs. Kelly intended to change her residence during her life-time, then plaintiff can take nothing by the present suit, irrespective of the *bona fides* of the deed to Caldwell. If, on the other hand, it be shown that when Mrs. Kelly left home in the Fall of 1888, she did it with the intention of changing her domicil, and of not returning, then the validity and *bona fides* of the deed to Caldwell became the material and decisive issue in the present suit.

The deed to Caldwell was executed after the debt of Pollak & Co. was contracted, and after it was reduced to judgment. The existence of that debt cast on Caldwell the duty and necessity of proving a sufficient valuable consideration to uphold his purchase, if Pollak was in a position to assail it.—*Zelnicker v. Brigham,* 74 Ala. 598. And that deed, even if an adequate, valuable consideration be proved, is open to inquiry, as any other conveyance of a debtor may be attacked by a creditor. On this hypothesis, Mrs. Kelly's deed to Caldwell is constructively fraudulent and inoperative against the debt of Pollak & Co., being of older date, in the absence of proof of a sufficient, valuable consideration.—*Mobile Savings Bank v. McDonnell,* 89 Ala. 434. No proof was offered of any consideration. So, a deed executed and not recorded within the time prescribed by law, is inoperative against a subsequent purchaser, or judgment-creditor with a lien, who becomes a purchaser, or acquires a lien without notice of the conveyance.—Code of 1886, §§ 1797, 1810 ; *Preston v. McMillan,* 58 Ala. 84; *Troy v. Walter,* 87 Ala. 233.

Should the deed, which was offered in evidence, have been excluded at that stage of the trial ? It was a link—a necessary link—in defendant's chain of evidence. Without it, he could not take the first step in maintenance of his right. We can not know what other proof he could have made. Possibly, he could have shown a sufficient, valuable consideration to uphold his deed, and possibly he could have proved notice, actual or constructive, before any lien attached in favor of Pollak & Co. The ruling of the court in excluding the deed rendered such proof improper, nugatory, and worthless. The question was not on its sufficiency, but its admissibility. The deed should not have been excluded.

The present suit was brought by Pollak against Echols, who was in possession when the action was commenced. The testimony, as we have stated, shows that Mrs. Kelly was in possession when the execution was in the hands of the sheriff, and

[Caldwell v. Pollak.]

there is no testimony that any one was in possession from the time she went to Georgia in the Fall of 1888, until after the sheriff's sale. There was, therefore, no evidence of any visible change of possession, which could give constructive notice of the change of title from Mrs. Kelly to Caldwell.—3 Brick. Dig. 451, § 42; *Fitzgerald v. Williamson*, 85 Ala. 585; *Troy v. Walter*, 87 Ala. 233.

Caldwell, as landlord of Echols, was made a party defendant. In defense he offered, as we have shown, what purported to be a deed of bargain and sale with covenants of warranty, from Mrs. Kelly to him, conveying the lot on a recited consideration of eight hundred dollars. The deed bears date June 25th, 1882, its execution was proved by one of the subscribing witnesses April 26, 1889, before a justice of the peace who certified it, and it was filed in the probate office for record April 27, 1889. Under the law as it existed before February 21, 1889. It is manifest that the deed was not self-proving, for it was not recorded within twelve months after its execution.—*Hart v. Ross*, 57 Ala. 518; *Same v. Same*, 64 Ala. 96; *Parsons v. Woodward*, 73 Ala. 348; *Kellar v. Moore*, 51 Ala. 340; *Sharpe v. Orme*, 61 Ala. 263; *Dugger v. Collins*, 69 Ala. 325; *Coker v. Ferguson*, 70 Ala. 284; *Roney v. Moss*, 76 Ala. 491. The law is now changed. See Sess. Acts 1888–9, page 41.

Before offering the deed in evidence, a witness testified "that the subscribing witness[es?] resided out of the State, and that the signatures thereto as subscribing witnesses were their genuine signature." There was objection to the introduction of the deed in evidence on this proof, the objection was sustained, and the defendant excepted. This, at that stage of the trial, was error.

As we have said, the testimony of Mrs. Kelly's intention in leaving the premises in 1888 is not positive, is not explicit. It is not so clear and direct, conceding it to be believed by the jury, as that it can be affirmed as matter of law that she thereby intended to abandon, and did abandon her homestead, with no intention of returning. In the absence of such change of domicil, the plaintiff showed no right of recovery. The sufficiency of this testimony should have been left to the jury, and not charged on by the court. In the general instruction to the jury to find for the plaintiff, if they believed the evidence, the Circuit Court erred.

Reversed and remanded.