(103 So. 884)
**HOLMES v. HOLMES.   (7 Div. 512.)**

(Supreme Court of Alabama.   April 9, 1925.)

**1. Domicile ⊜11—Mixed question of law and fact dependent on intention.**

Domicile of aged parent taking up residence with son, where latter was teaching school, *held* question of mixed law and fact dependent on intention of parent.

**2. Domicile ⊜8—Domicile presumed to continue until abandoned.**

Domicile once acquired is presumed to continue until abandoned with no present intention to return and establishment of another place of residence with intent to remain permanently or indefinitely.

**3. Executors and administrators ⊜29(2) —. Grant of letters on estate of noninhabitant not void, but voidable by direct proceeding.**

Under Code 1923, § 5741, authorizing letters of administration where intestate was inhabitant of county, grant of letters on estate of noninhabitant is not void, but voidable by direct proceeding.

**4. Witnesses ⊜237(4)—Question as to how long since deceased lived in county of administration held objectionable as assuming abandonment of residence therein.**

In proceeding to vacate appointment of administrator on ground that deceased was not resident of county when he died, question to witness, as to how long it had been since deceased lived in county, *held* objectionable as assuming that he had abandoned residence therein.

**5. Appeal and error ⊜1058(2)—Sustaining objection to question held not reversible error, in view of witness' answer a moment later.**

In proceeding to vacate appointment of administrator on ground that deceased was not resident of county when he died, sustaining objection to petitioner's question whether he had any home there *held* not reversible error, in view of witness' answer a moment later that deceased had lived in such county with petitioner's brother only.

**6. Executors and administrators ⊜32(2) — Evidence that decedent had personalty and money on deposit in another county held admissible on question of domicile.**

In proceedings to revoke letters of administration, testimony that decedent had personalty in another county other than such as he carried with him to petitioner's home therein,

and money on deposit there, *held* admissible on question of his domicile.

**7. Evidence ⬤═471(9)—Witness may not answer as to uncommunicated intent of another.**

Witness may not answer as to uncommunicated intent of another.

**8. Evidence ⬤═269(2)—Decedent's declaration as to intent to change domicile admissible on question of jurisdiction to grant letters.**

Declarations of decedent as to intent to change domicile are admissible on question of jurisdiction to grant letters of administration.

**9. Executors and administrators ⬤═32(2)— Evidence that deceased left personalty in county of administration when he went to another county held admissible.**

In proceedings to vacate appointment of administrator on ground that deceased was not resident of county when he died, evidence that he left articles of personal property therein when he went to another county *held* admissible, on question of intent to return and to show that he had property in county to be administered.

**10. Witnesses ⬤═388(10)—Testimony contradicting witness as to deceased's statement of intent to live in another county held inadmissible as very different from predicate laid.**

In proceedings to vacate appointment of administrator on ground of deceased's non-residence in county when he died, testimony contradicting witness' testimony as to deceased's statement, before moving to another county, that he wanted to live there, *held* inadmissible as very different from predicate laid by question to impeached witness, as to her statements to impeaching witness, that deceased, because of his health, was going to stay with petitioner in latter county until Christmas and then stay with impeached witness in third county for a while.

**11. Witnesses ⬤═388(9) — Only substantial similarity between predicate and contradictory declaration required.**

Only substantial similarity between predicate and declaration contradicting witness is required.

Appeal from Probate Court, Clay County; E. J. Garrison, Judge.

A. I. Holmes having been appointed administrator of the estate of J. E. Holmes, deceased, T. J. Holmes petitioned for annulment of his appointment. From a decree denying the petition, petitioner appeals. Reversed and remanded.

See, also, 210 Ala. 227, 97 So. 628.

James J. Mayfield, of Montgomery, and John A. Darden, of Goodwater, for appellant.

Only the probate court of Coosa county had jurisdiction. Code 1923, § 5741. The petition to revoke should have been granted on appellant's direct attack. Coltart v. Allen, 40 Ala. 155, 88 Am. Dec. 757; Barclift v. Treece, 77 Ala. 531; Childs v. Davis, 172 Ala. 266, 55 So. 540; Carpigiani v. Hall, 172 Ala. 287, 55 So. 248, Ann. Cas. 1913D, 651; 16 Cyc. 152; Watson v. Glover, 77 Ala. 323; Wallace v. Walker, 37 Ga. 265, 92 Am. Dec. 70; Wernse v. Hall, 101 Ill. 423; Kerr v. Kerr, 41 N. Y. 272.

Riddle & Riddle, of Talladega, for appellee.

Counsel discuss the questions raised, but without citing authorities.

SAYRE, J. Appellee Holmes was appointed by the probate court of Clay county to administer upon the estate of his father, J. E. Holmes, deceased. Appellant, another son of deceased, petitioned the court to vacate the order appointing appellee alleging that deceased, at and before the time of his death, "was a resident and an inhabitant of Coosa county, Ala., and had been for some time previous to his demise; and at the time of his death he owned and possessed assets in Coosa county, Ala., the county of his residence when he died, and that said assets are still in Coosa county, Ala., and belong to his estate." In the probate court appellant's petition was denied, after which this appeal was taken.

No question is raised as to the fitness of appellee for his office of administrator. We think it may be assumed on the evidence that decedent left property in both Clay and Coosa. So then the only issue involved relates to the domicile of decedent, or, to use the phraseology of the statute, section 5741 of the Code of 1923, the issue is whether intestate, at the time of his death, was an "inhabitant" of Clay or Coosa county.

[1, 2] It is not necessary to undertake an elaborate statement of the principles of law governing the courts in the prosecution of such inquiries. They have been clearly stated by this court in Merrill v. Morrissett, 76 Ala. 433, and in the cases to which we shall hereafter refer. It will not be denied that prior to August 26, 1922, for more than 50 years, decedent had lived and had his domicile in Clay county, was an inhabitant of that county within the purview of the statute. In 1916 his wife, the mother of these parties, had died, and thereafter, until the date first mentioned, decedent had lived with another son, D. C. Holmes, in Clay county. In August, 1922, D. C. Holmes, who was a school teacher, was about to move to South Alabama to fill an engagement he had to teach a school in that section. Probably his future movements from year to year were undetermined; but the evidence points very conclusively to the fact he retained his home place in Clay and had

at least a floating intention of returning to that county. Decedent was then quite old and needed constant care. He moved, or was moved, to the residence of petitioner at Goodwater in Coosa county, where he remained until his death some weeks later, viz., October 10, 1922. His domicile during this last period and at the time of his death must be determined as a mixed question of law and fact, and depends upon the intention, if any, with which he went to Goodwater and the intention, if any, with which he remained there. A domicile once acquired is presumed to continue until a change, facto et animo, is shown. Bragg v. State, 69 Ala. 204. If there was a change, there must have been both an abandonment of his former domicile with no present intention to return, and the establishment of another place of residence with intention to remain permanently, or, at least, for an unlimited time; the former may be inferred from the latter. Allgood v. Williams, 92 Ala. 551, 8 So. 722; Caldwell v. Pollak, 91 Ala. 353, 8 So. 546; Young v. Pollak, 85 Ala. 439, 5 So. 279; Merrill v. Morrissett, supra. In the probate court the finding was that decedent had not changed his domicile. This finding is not assigned for error. Alleged errors are based entirely upon the admission and exclusion of evidence. The foregoing summary of the facts and statement of well-settled principles of pertinent law have been made in order that the questions of evidence involved may be adjudged with due regard for them.

[3] By the statute, section 5741, supra, "Courts of probate, within their respective counties, have authority to grant letters of administration on the estates of persons dying intestate, as follows: (1) Where the intestate, at the time of his death, was an inhabitant of the county," and in other cases about which this appeal is not concerned. Where the fact of inhabitancy does not exist, the grant of administration is not void, but may be avoided by a direct proceeding for that purpose. Coltart v. Allen, 40 Ala. 155, 88 Am. Dec. 757; Barclift v. Treece, 77 Ala. 531. The court had, therefore, jurisdiction of the issue presented by appellant's petition.

[4, 5] We see no reversible error in the first ruling assigned. Petitioner asked:

"How long has it been since he [decedent] lived in Clay county? Did he have any home there?"

Defendant's objection was sustained, we suppose, because the question seemed to assume that decedent had abandoned his residence in Clay. In this the court was right. As for the information which it is presumed petitioner sought by the second branch of the question, he had that when the witness answered a moment later that decedent had lived in Clay county with petitioner's broth-er and had never lived in that county with any one else.

[6] The fact that deceased had personal property in Coosa county other than such as he carried with him when he went to petitioner's home in August, 1922, and that he had money on deposit in that county, was not wholly lacking in relevant probative tendency as touching the matter of the intention of deceased, and the evidence offered to that effect should have been admitted.

[7] A witness may not answer as to the uncommunicated intent of another. For this reason assignment 4 can avail appellant, petitioner, nothing. For like reason assignment of error 8a shows no reason for reversal.

[8] "It is undoubtedly true that the declarations of a deceased person as to his domicile are admissible to illustrate intention." Merrill v. Morrissett, supra. See, also, Griffin v. Wall, 32 Ala. 149. It follows that the court erred when it sustained defendant's objection to petitioner's question to the witness T. J. Holmes:

"I will ask whether or not he [decedent] made any statement whether he was going to make that [meaning petitioner's home in Goodwater] his home or not?"

[9] There was no error in allowing defendant to show that decedent had been in the war between the states, had some trinkets, mementoes of the war, a part of his own and of his dead wife's wardrobe, and some wearing apparel of a deceased child, all which he left at D. C. Holmes when, in August, 1922, he went to Goodwater. This evidence may have been of small probative force, but it had a tendency to shed some light on decedent's purpose, whether to remain in Goodwater or to return to Clay county, and besides it helped to show that decedent had property in Clay to be administered, and so that the grant of administration was not a futile thing.

[10, 11] Mrs. D. C. Holmes had testified that before deceased moved to Goodwater "he said he wanted to go and live down there." By way of laying a predicate for contradicting this witness, defendant's attorney asked:

"Did you or not have a conversation with her"—meaning Mrs. Claudia Harris—"in which you stated this, or this in substance, that Mr. Holmes [decedent] was on account of his health going to stay with Tom [petitioner] until Christmas and then go down to South Alabama and stay with you there a while?"

There was no objection to this predicate. Defendant, over petitioner's objection, among others, that no sufficient predicate had been laid, was permitted to show by Mrs. Lottie Harris that Mrs. D. C. Holmes had said in substance that Mr. Holmes (meaning dece-

dent) was going there to Tom's (meaning petitioner's) while they (meaning witness and her husband) were off teaching school, and when they came back, if he did not come down there with them before Christmas, that he would go down there Christmas and then come back and live with them when they moved back in the spring. It does not appear that Claudia and Lottie are one and the same person; but, aside from that, the matter thus shown in the way of contradiction was very different from the predicate laid, and it was error to overrule petitioner's objection. So with respect to the impeachment by the witness Mrs. Culberson; it does not explicitly appear that a predicate was laid by asking Mrs. Holmes whether she had made a statement to Mrs. Culberson; but conceding that such is the meaning of the bill of exceptions, the statement shown by the contradicting witness was considerably broader than the predicate laid. There was more consistency between the predicate laid for the contradiction by the witness Kelly and the testimony of that witness. But there were some noticeable differences which should have been avoided. However, we would not be understood as requiring more than substantial similarity between the predicate and the counter declaration. Nelson v. Iverson, 17 Ala. 219.

Other rulings complained of are covered in principle by what has been said, or were of no possible moment one way or the other.

For the errors shown, the judgment must be reversed.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.