239 So.2d 206

**STATE of Alabama ex rel. Harvey L. RA-BREN as Commissioner of Revenue**

**v.**

**John T. BAXTER.**

**3 Div. 4.**

Court of Civil Appeals of Alabama.

April 8, 1970.

On Rehearing May 13, 1970.

On Second Rehearing June 30, 1970.

Atty. Gen. and Asst. Counsel, Dept. of Revenue, for the State.

MacDonald Gallion, Atty. Gen., Willard W. Livingston, Asst. Atty. Gen. and Counsel, Dept. of Revenue, B. Frank Loeb, Asst.

Jones, Murray, Stewart & Varner, Montgomery, for appellee.

THAGARD, Presiding Judge.

This case originated with the filing on June 14, 1968, of a petition addressed to the Circuit Court of Montgomery County by John T. Baxter, appellee, for a writ of mandamus requiring the Commissioner of Revenue to quash and hold for naught final assessments against him for income tax for the calendar years 1961–1964, and to also quash and hold for naught a writ of garnishment issued by appellant and served on appellee's employer in an effort to collect the tax assessed.

The State filed its plea in abatement to said petition, alleging as grounds that petitioner had failed to avail himself of the statutory remedy by way of appeal from the final assessments. After hearing, the trial court entered a judgment denying the State's plea in abatement, and, subsequently, after final submission, rendered a final judgment ordering the issuance of a peremptory writ of mandamus as prayed for. From that final judgment the State has appealed.

There are fourteen assignments of error. Since Assignments of Error 1 through 10, inclusive, all have to do with the alleged error of the trial court in denying appellant's plea in abatement to appellee's petition for the writ of mandamus, appellant

chose to argue and did argue them in bulk. We agree that these assignments are so related that appellant had the option which he chose.

Appellant says that, "The remaining Assignments of Error Nos. 11 through 14, * * * are based upon the error of the lower court in entering a final judgment ordering the Commissioner of Revenue to quash the final assessments previously entered by him. The questions of fact and law which the lower court was called upon to decide in entering its final judgment are essentially the same as those which entered into its ruling on the Plea in Abatement; therefore, the questions presented to this Honorable Court in this Appeal, in connection with Assignments of Error Nos. 11 through 14 are essentially the same as those presented under the ruling of the lower court on the Plea in Abatement and assigned as error by Appellant in its Assignments of Error Nos. 1 through 10." That appellant is mistaken in the foregoing statement we shall now try to demonstrate.

Appellee's petition for the writ of mandamus contained a double aspect both in allegations and prayer for relief, viz: (1) That the assessments were void and the Commissioner of Revenue should be required to vacate them, and (2) The writ of garnishment was wrongfully issued and invalid and the Commissioner should be required to quash it. Under some circumstances the court might rightfully have upheld both the assessments and the garnishment, and under other circumstances it might rightfully have upheld the assessments and struck down the garnishment, but under no circumstances pertaining to this case could it have struck down the assessments and upheld the garnishments, for in the absence of valid assessments the appellee would not have been indebted to the State. We conclude, therefore, that the two aspects are different and separable, and may have been so considered by the trial court and may be so considered by us.

Appellant's Assignments of Error Nos. 1 through 10 attack in one way or another the trial court's interlocutory judgment dated September 30, 1968, denying appellant's plea in abatement. These assignments in effect attack the trial court's ruling on both aspects of the petition for the writ of mandamus. As hereinabove indicated, we think they were so related as properly to be arguable in bulk.

Assignment of Error No. 11 simply says that the lower court erred in entering final judgment in favor of appellee. Assignment of Error No. 12 says that "The lower court erred in entering a final judgment dated October 30, 1968, ordering * * *" (then describing both aspects of the judgment), thus saying the same thing, but in more detail, as Assignment No. 11. Assignments Nos. 13 and 14 split the two aspects of the judgment, No. 13 attacking the ordering of the issuance of the peremptory writ directing the Commissioner of Revenue to invalidate the assessments and No. 14 attacking that aspect of the final judgment ordering the issuance of the peremptory writ directing the Commissioner to quash the issuance of the writ of garnishment. Assignment of Error No. 14 is the only assignment that attacks only the garnishment aspect of the judgment on appellant's plea in abatement and the garnishment aspect of the final judgment. Appellant's entire argument is addressed only to the assessment aspect of the two judgments. Assignment of Error No. 14 is not argued, nor is the garnishment feature argued in the arguments addressed to the other assignments of error. Therefore, we deem that appellant has abandoned its position as to the garnishment aspect of the judgments, and that aspect of the interlocutory judgment dated September 30, 1968, and of the final judgment dated October 30, 1968, will be affirmed.

Now having disposed of what we have referred to as the second aspect of the interlocutory and final judgments, we proceed to a discussion of the first aspect; that is, that aspect that had to do with the validity of

the assessments. As hereinabove said, appellant's first ten assignments of error attack the interlocutory judgment overruling and denying appellant's plea in abatement to appellee's petition for the writ of mandamus. Appellant insists that the remedy of mandamus was not available to appellee, because the appellee had not availed himself of the statutory right of appeal from the assessments and cited among others the case of Denson v. First National Bank of Birmingham, 276 Ala. 146, 159 So.2d 849. On the other hand, appellee contends that the assessments were void, that void assessments like void judgments will not support an appeal, and that in such a situation mandamus is the proper remedy, citing Sadler v. Sessions, 261 Ala. 323, 74 So. 2d 425.

It is our opinion that if the assessments were valid, the trial court should have rendered judgment in favor of appellant on its plea in abatement, because of the failure of the appellee to appeal from the assessments, and that its failure to do so was reversible error. On the other hand, we think that if the assessments were void, as contended by appellee, the judgment of the trial court in denying the plea in abatement was correct. So the crux of the case is the validity vel non of the assessments. And that question hinges upon whether appellee had changed his domicile prior to the years for which the assessments were made, and whether the notices given the appellee were legally sufficient.

■ Black's Law Dictionary (p. 572, Revised Fourth Edition) defines domicile as "That place where a man has his true, fixed, and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning."

From Ex parte Phillips, 275 Ala. 80, 152 So.2d 144, cited by appellant, we quote:

"In determining this question, we will review some of the rules pertaining to domicile. Since every person must have a domicile, the law assigns to persons incapable of acquiring a domicile through choice, a domicile by operation of law. This first domicile so assigned is the domicile of origin. Beale, Conflict of Laws, Vol. 1, page 210. The place of the birth of a person is considered as his domicile of origin, if at the time of his birth it is the domicile of his parents. Daniel v. Hill, 52 Ala. 430. A domicile of origin, as in the case of domicile of choice, when once established is continuing until another domicile is acquired. Daniel v. Hill, supra; (Other citations omitted.)

\* \* \* \* \* \*

"In order to acquire a domicile of choice there must be both an abandonment of the former domicile with no present intention of return, and the establishment of another place of residence with the intention to remain permanently, or at least for an unlimited time; and the intent to remain permanently may be inferred from the intent to remain for an unlimited time. Holmes v. Holmes, 212 Ala. 597, 103 So. 884; (Other citations omitted)

"It is also well settled by our decisions that a domicile once acquired continues until a new domicile is effectuated. Holmes v. Holmes, supra; (Other citations omitted)

\* \* \* \* \* \*

"Furthermore, Sec. 17, Title 17, Code of Alabama 1940 provides:

'No person shall lose or acquire a residence either by temporary absence from his or her place of residence without the intention of remaining, or by being a student of an institution of learning \* \* \*.'

"While the above section is in the chapter concerning electors and voters, the declaration is but a recognition of established principles concerning domicile

and is persuasive in our present determination.

"Even though the respondent had expressed a dislike of Geneva County and his intention not to return there, we can find nothing in the evidence presented showing that the respondent had, by any of his acts, indicated his intention of making Tuscaloosa his home or domicile. In fact, the inferences from the evidence are otherwise. This being so, his Geneva County domicile must be deemed to have continued, by respondent having acquired no new domicile." (275 Ala. at pages 82 and 83, 152 So.2d at pages 146 and 147)

We think the foregoing quotes about sum up the law in this case insofar as the question of domicile is concerned. We move now to brief discussion of the facts.

The undisputed evidence discloses that the appellee was born and reared in Chatom, Alabama, and that he lived at Chatom on his mother's farm from 1937 through 1955 and again from 1959 through May, 1960, after which he held jobs that required him to travel extensively in the United States and also in different parts of the world. During 1960 and 1961 he lived in Kodiak, Alaska, where he was employed by Philco Corporation. There he lived in a rented room with rented furniture. During parts of 1963 and 1964 he lived in Palo Alto, California, but spent part of that time in East Kenya, Africa, and perhaps other places not disclosed by the record. During this time he was single; he did extensive traveling in the course of his employment; he used his mother's address at Chatom, Alabama, as a permanent mailing address. His last vote was cast in person at Chatom, Alabama, in 1959. If between that time and the time of the making of the tax assessments he voted elsewhere the record does not disclose it. He maintained from May, 1960, through the end of the calendar year 1964 a joint checking account with his mother at the Chatom State Bank.

He was a member of the Center Ridge Baptist Church in Chatom, Alabama, in 1959, and if he has ever affiliated with a church elsewhere the record does not disclose it. In November, 1964, in response to efforts of the Alabama Revenue Department to persuade him to file returns in Alabama, he wrote a letter to the department saying among other things: "I hope you understand that it is not my intention to neglect payment of any taxes due the State of Alabama. I was born and raised in Alabama *and always have and will consider Alabama as my home.*" (Emphasis supplied.) He filed a federal income tax return for the year 1960 in Birmingham, Alabama. We note with interest that the photostatic copy of his 1960 federal return first showed his home address written by typewriter, as Rt. 1, Box 16, Chatom, Alabama, but that these typewritten words were lined through and a handwritten address in Alaska was substituted therefor.

From a questionnaire dated November 12, 1964, we quote: "In what jurisdiction do you consider yourself domiciled?" (Answer) "Alaska—1961"; and "Is it your intention to return to that place which you claim as your domicile?" (Answer) "No."

In Ex parte Weissinger, 247 Ala. 113, 22 So.2d 510, the Supreme Court said:

"The law is also established that a domicile, once acquired, is presumed to exist until a new one has been gained 'facto et animo.' * * * And in order to displace the former, original domicile by the acquisition of one of choice, actual residence *and intent to remain at the new one must* concur * * * (Emphasis supplied.)

\* \* \* \* \* \*

"One who asserts a change of domicile has the burden of establishing it. Caldwell v. Pollak, 91 Ala. 353, 357, 8 So. 546. And 'where facts are conflicting, the presumption is strongly in favor of an original, or former, domicile, as against

an acquired one,' etc. 28 C.J.S. Domicile § 16, p. 36." (247 Ala. at page 117, 22 So. 2d at page 513)

The evidence is undisputed that Chatom, Alabama, was appellee's domicile in May, 1959, and we think the evidence is rather overwhelming that he entertained no intention of establishing a permanent domicile anywhere else until after the tax assessments were made. Except for his protests to appellant that he was required to pay income tax to Alaska, he has failed utterly to offer satisfactory proof of a change of domicile. In fact, the preponderance of the evidence, including his statement that he would always consider Alabama his home, is the other way; and we are clear to the conclusion that as a matter of law the appellee was domiciled in Alabama during the pertinent years, and that on that score the assessments were valid.

Appellee also contends the assessments were void because notice was not personally served upon him.

The tax assessments were made under the authority of Title 51, § 373(7) which provides for the imposition of an income tax upon "every natural person domiciled in the state of Alabama", and in making the assessments and giving notice the Revenue Department followed the procedure set out in Title 51, § 407, of the 1940 Recompiled Code of Alabama. Said section 407, which contains, inter alia, the following provisions:

"Provided, further, that the mailing of the income tax blank to persons liable for the tax herein provided, shall be the only notice required to be given, except where the amount as finally fixed by the department of revenue shall be different from the amount shown to be due by the returns as made by the taxpayer. * * * Provided, further, that where the department of revenue determines that the amount due is different from that shown by the taxpayer's return, notice of such different amount shall be given to tax-

payer by registered mail, return receipt requested, giving the taxpayer notice of the amount so fixed and the department of revenue shall fix a day, not less than fifteen days from date of such notice, for hearing any protest of taxpayer. The time and place of such hearing shall be designated in such notice. Upon hearing such protest or if the taxpayer fails to appear on the day set, the department of revenue shall finally fix, determine and assess the amount of tax due and notify the taxpayer thereof by registered mail. * * *"

We will not relate in detail the steps taken by the revenue department, but suffice it to say that the department complied with every detail of Title 51, § 407, supra, except that where registered mail is required it used certified mail, as authorized by Title 1, § 17, 1940 Recompiled Code of Alabama.

On the question of the constitutionality of the provisions of § 407, supra, the Supreme Court said in Campbell v. State, 242 Ala. 215, 5 So.2d 466:

"The authorities generally on this subject refer to Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565. That case has recently been modified by the United States Supreme Court so as to justify a personal judgment against a *resident* of the forum who is sojourning in another state and there notified by substituted service, provided such service complies with the law of the forum, and holding that it affords due process if the 'substituted service provided for such cases and employed is reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard.' * * * There he was personally served outside the state of the forum. It was held to justify a personal judgment. This is the first time the effect of substituted service has by that court been given such a result as to residents when it would not bind non-residents. This is in accord with what appears to be the modern trend of constitutional interpretation. 12 Amer.Jur.

291." (242 Ala. at page 220, 5 So.2d at page 470)

Also, we observe the following recitations of rules of law in 51 Am.Jur., Taxation, § 731 and § 732:

"The notice which is essential to the validity of an assessment for taxation need not be personal; it is sufficient to make the service by mail, by publication, or by posting in some public place. * * * In the case of notice by mail, the placing in the mail of a notice of a demand for taxes is prima facie evidence that it was received by the addressee. And a demand for taxes by mail is sufficient where, although irregularly addressed, it can be found to have been received by the proper person.

*   *   *   *   *   *

"The fundamental idea in due process of law is notice and an opportunity to be heard in some orderly proceeding adapted to the nature of the case. In matters of taxation, due process requires that after such notice as may be appropriate, the taxpayer has opportunity to be heard as to the validity of the tax and the amount thereof, but it does not demand opportunity for judicial review prior to the inauguration of efforts to collect a tax, or an opportunity for hearing upon each successive step in the tax proceedings. The due process requirement is satisfied if there is opportunity to question the validity or amount of a tax either before the amount is determined or in subsequent proceedings for its collection and enforcement * * *"

We hold that the provisions of Title 51, § 407, supra, for the giving of notice to legal residents of Alabama do not violate the due process clause of the constitution.

One of the certified mail return cards was signed by Wilma B. Williamson, the sister of appellee, and the other by "Mrs. John T. Baxter", who we presume to be the wife of appellee. As we understand the record and appellee's brief, he does not even take the position that he did not receive the notices, but only that they were not in compliance with constitutional requirements.

We are clear to the conclusion that the assessments were valid and binding, that the requirements of the statute as to the giving of notice were complied with, and that the trial court erred in denying appellant's plea in abatement as to that aspect pertaining to the validity of the assessments and in setting aside and declaring for naught the assessments by its final decree.

Affirmed in part and reversed and remanded in part.

## ON REHEARING

In support of his application for rehearing, appellee insists that in our original opinion we erred (1) In holding that the assessments and notices given pursuant thereto were valid and not contrary to the constitution, and (2) In reversing the judgment of the trial court denying appellant's plea in abatement to appellee's application for writ of mandamus.

█ In arguing proposition (1), supra, appellee insists that the taxing statute under which the Baxter assessments were made is applicable only to residents of the State of Alabama by its very terms, citing Code of Alabama, Title 51, Sec. 377, which reads in part as follows:

"Tax on individuals.—The tax herein levied and imposed upon every resident of this state, * * *."

But appellee apparently overlooks the last sentence of Sec. 377, supra, which reads in part as follows:

"Every natural person *domiciled* in the state of Alabama, * * * shall be presumed to be residing within the state for the purpose of determining liability for income taxes." (Emphasis supplied)

Appellee insists that in relying upon Campbell v. State, 242 Ala. 215, 220, 5 So.2d 466, 470, we failed to make the distinction between domicile and residence. True, the

*Campbell* case, supra, uses the words "resident of the forum who is sojourning in another state", but the *Campbell* case cites Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278, which is also referred to by appellee, and which we have carefully read and from which we quote:

"Domicile in the state is alone sufficient to bring an absent defendant within reach of state's jurisdiction for purposes of a personal judgment by means of appropriate *substituted service.* * * *" (Emphasis supplied)

In the *Campbell* case, supra, Justice Foster said:

"There is a distinction between *substituted* service and *constructive* service in this connection. The former includes the act of leaving the process at the residence or place of business of the party (50 Corpus Juris 490), or, of leaving it with an agent or attorney of the party (50 Corpus Juris 494, section 101), or by mailing it to the party (50 Corpus Juris 495, section 102). Service by publication alone is said more accurately to be constructive service, (50 Corpus Juris 490, section 94, note 69); but it is sometimes said to be 'a substitute for personal service and gives constructive notice only.' 50 Corpus Juris 496, notes 3, 4. But it is said in Milliken v. Meyer, supra, the service should be reasonably calculated to give him actual notice (unless the proceeding is in rem, when constructive notice will suffice)." (242 Ala. at page 220, 5 So.2d at page 471)

Upon reviewing our original opinion we note that we said:

"We hold that the provisions of Title 51, § 407, supra, for the giving of notice to legal residents of Alabama do not violate the due process clause of the constitution."

We now hold that the provisions of Title 51, § 407, for the giving of notice to legal residents of Alabama or persons domiciled therein do not violate the due process clause of the constitution, and we adhere to our original opinion that the assessments and the notices were valid.

Before moving on to the appellee's second insistence in his application for rehearing we take note of his argument that some of the notices could not have reached Baxter until after law day of the proceeding, saying that, "At Baxter's California address Baxter was notified to file reports within ten days when the Department was informed he would not get mail for possibly a month or more." True, but the record shows that the preliminary assessments were made on October 17, 1966, but on November 8, 1966, the Department wrote Baxter at his Chatom, Alabama, address that the Department was continuing his file for an additional 30 days, during which he might submit any protest that he might see fit to file. To that letter Baxter replied under date of November 22, 1966 (thus showing that he received the notices of the preliminary assessments), again denying that he was a resident of Alabama during the pertinent years. The Department wrote him follow-up letters on December 2, 1966, January 11, 1967, and May 8, 1967, all of which apparently were ignored, and finally on June 20, 1967, made the assessments final and mailed copies of the assessments to Baxter, with a note attached to each copy that if he were dissatisfied with the final assessment he might take an appeal within 30 days. If the giving of notice and the opportunity for a fair hearing is due process, as the cases hold, it seems to us that appellee had a full share thereof.

After carefully considering appellee's second insistence, viz: That since appellant's plea in abatement was addressed to appellee's petition as a whole and not to the separate aspects thereof, and we held one aspect of the plea bad, we should not have reversed the trial court for having overruled the plea as a whole, we have reached the conclusion that there is merit in appellee's insistence. We now affirm the judgment of the trial court in over-

ruling and denying appellant's plea in abatement to appellee's petition for the writ of mandamus; but, as hereinabove indicated, we adhere to our reversal of the trial court's final judgment holding the assessments void.

Application for rehearing granted, opinion extended, affirmed in part and reversed and remanded in part.

## ON APPLICATION FOR SECOND REHEARING

**PER CURIAM.**

This cause is before us on appellee's second application for rehearing.

The application presents nothing that has not been previously raised and argued except the contention that the pleadings did not sufficiently raise the question of domicile and the cause was tried in the court below solely on the question of the residence in Alabama vel non of appellee during the years for which the tax was levied. With that we disagree. The paramount questions raised in the trial court and decided were whether or not the assessments were valid and the notices sufficient, both of which we have already decided against the appellee. As to those issues we adhere to the views expressed in our original opinion.

Appellee also complains that our opinion did not sufficiently apprise the trial court as to whether or not the issues are to be retried. We are persuaded that there is some merit in that complaint. We think the issues involving the validity of the assessments and the sufficiency of the notices were fully litigated.

In order to bring this litigation to an end in this court and to relieve the trial court of any further burden in the matter the second application for rehearing is granted, our original opinion and the judgment pursuant thereto and our opinion and judgment on the first application for rehearing are modified, the judgment of the trial court ordering the writ of mandamus to void and hold for naught the writ of garnishment is affirmed, and the judgment of the trial court ordering the writ of mandamus to void the assessments is reversed and judgment here rendered vacating and voiding that part of the writ of mandamus that required the appellant to void and hold for naught the assessments, and denying the petition of appellee for that part of the writ pertaining to the enforcement of the assessments.

Application for second rehearing granted, opinion again extended, affirmed in part and reversed and rendered in part.