# LYMAN *vs.* THE STATE.

[INDICTMENT FOR ASSAULT WITH INTENT TO MURDER.]

1. *Former jeopardy, plea of; what must state.*—A plea of former jeopardy, where there has been neither a conviction nor an acquittal, must state that the defendant had been put upon his trial on a good indictment, and also that the jury had been duly impanneled and sworn, and charged with his trial, and without his consent, and without any pressing necessity, discharged without rendering a verdict.

2. *Charge of court; when will be presumed to be warranted by the proof.* If all the evidence is not set out in the bill of exceptions, a charge of the court which is excepted to, will be presumed to have been warranted by the proof. So, also, where a charge is refused, it will be presumed, if necessary to sustain the ruling of the court below, that the charge was abstract, the bill of exceptions not showing to the contrary. Error must affirmatively be made to appear in such a case.

APPEAL from Criminal Court of Dallas.
Tried before Hon. GEORGE H. CRAIG.

Appellant was tried and convicted for an assault upon Andrew J. Baxley, with intent to murder, &c., and sentenced to the penitentiary for ten years. On his appeal, this court reversed the judgment and sentence, and remanded the cause for a new trial, at the January term, 1871. In the opinion then delivered, the indictment was held sufficient, it being in the form given in the Revised Code, but this court held that the court below erred in excluding, at the instance of the State, one Parsons, a juror, who had been accepted by the State and the defendant, though not sworn in chief, both parties having exhausted their peremptory challenges.—See *Lyman v. The State*, 45 Ala. 76.

Appellant being again put upon his trial, pleaded former jeopardy. To this plea, as first filed, the court sustained a demurrer. Appellant, by leave of court, then amended it, and the court again sustained a demurrer to it. The plea was then amended a second time, and upon

the plea as thus amended the State took issue. The last plea, omitting formal parts, was as follows:

"Defendant says that the said State of Alabama ought not further to prosecute said indictment against him, because he says· that heretofore, to-wit, at the December term, 1870, of this said honorable court, begun and holden on the first Monday in December, 1870, the grand jurors sworn, impanneled and charged in and for said court, at said December term, presented in open court the following bill of indictment, to-wit." [Here follows a copy of the indictment.] "To which said indictment the said James Lyman pleaded not guilty to the offense therein charged against him, and thereby and thereof put himself upon the county, and the said State did the like; and thereupon, on the same day, and at the same term of the said honorable criminal court, a jury of twelve men were duly impanneled and sworn to try said issue, of which said jury one Henry Parsons was one of the number, who was then and there, against the objections of the said James Lyman, and at the request and instance of the said State, set aside and removed from the said jury which had been thus legally impanneled and sworn to try the issue between the said State and the said James Lyman; and that the said Henry Parsons, who was one of the said jury thus impanneled and sworn, was set aside without any legal cause, and was not permitted by the said court to sit upon the said jury as one of the said James Lyman's triers, when in law the said James Lyman had a right to be tried by the said jury as it stood, with the said Henry Parsons making one of the number of said ·jury, and the said jury of which the said Henry Parsons was a member being then and there legally drawn and legally impanneled and sworn to try said issue between the said State and the said defendant, James Lyman; he, the said James Lyman, was then and there put in legal jeopardy under the said indictment, as by the record thereof more fully appears. And the said James Lyman further says, that though no verdict was reached in the case by the said jury, the failure thereof was not owing to any consent made or given by

him, the said James Lyman, or any interposition of provi-
dence, or any other thing which in law should subject the
said James Lyman to be again put in jeopardy; and the
record of the said former jeopardy still remains in no way
reversed or made void. And the said James Lyman fur-
ther says, that he is the same identical James Lyman and
person mentioned in the said former indictment, and that
the said offense for which he now stands indicted is one
and the same offense mentioned in the said former indict-
ment, and no other, and this he is ready to verify; where-
fore," &c.

The first plea, and the amended plea, set up nearly the
same facts as those contained in the above plea, except
that neither states the jury had been sworn, or charged
with the trial of defendant.

In support of the plea, defendant introduced the record
of the former trial, and the bill of exceptions then re-
served, so much of which as is material to the exclusion of
the juror Parsons may be stated as follows:

After the State and defendant had exhausted all the
challenges allowed by law, and had accepted the jurors
then impanneled, the jury not being complete, one Parsons,
who had been regularly summoned and drawn as a tales-
man, was called, and after being duly sworn, asked by the
court all the questions contained in §§ 4180, 4182 and 4183
of the Revised Code, and among the questions the follow-
ing: "Have you a fixed opinion against capital or peniten-
tiary punishment, or that a conviction should not be had
on circumstantial evidence?" The court did not fully un-
derstand the answer to the question as to conviction on
circumstantial evidence, and the question was again asked
Parsons, but before he could answer, the defendant's coun-
sel interposed by saying that Parsons had answered that
"he would convict on circumstantial evidence, if strong
enough," and asked him if such was not the case; but the
court stopped the counsel, and again asked Parsons the
question, and he answered that "he would convict on cir-
cumstantial evidence, if strong enough;" thereupon the

court ruled that he was competent, and he took his seat upon the jury.

. The solicitor for the State objected, and asked the court to protect the State and prisoner by setting aside the juror, on the ground that he was incompetent and unfit to sit in the case, stating that Parsons had sworn positively that he would *not* convict on circumstantial evidence, and afterwards, on the suggestion of defendant's counsel, stating to the contrary. The court being doubtful as to the statements made by Parsons, again called the juror, against defendant's objections, and swore him to answer questions. Parsons was then asked by the court what answer he had given to the question when first interrogated, and answered that "he aimed to say that he would convict on circumstantial evidence, if strong enough;" the court then told the juror that he must tell what answer he made, and not what "he aimed to say." Parsons answered that "he made a blunder," and "did not say so, but meant it;" the court required the juror to state explicitly what he said in answer to the question, when Parsons stated, "I did say I would convict on circumstantial evidence." Thereupon the court excluded Parsons from the jury, on the ground that it was the right and duty of the court to protect the State and the prisoner from a juror who was unfit to sit on the jury, he having made three different and contradictory statements, under oath, relative to a question put to him only a few minutes before, thereby showing to the court that he either did not know his own mind, or was willfully corrupt. To all of which second examination of Parsons, and his exclusion from the jury, defendant excepted. Another talesman was then called, questioned, sworn, &c., and took his seat as a juror, thereby completing the jury, and defendant excepted, &c.

It was admitted that defendant was the identical person mentioned in the indictment, and that the indictment is the identical indictment, and for the identical offense, upon which defendant was formerly tried. This being the only evidence in support of the plea of former jeopardy, the court, at the request of the State, charged the jury that

the evidence was insufficient to sustain defendant's plea, and defendant duly excepted.

The defendant then asked the court to give three written charges to the jury. These charges, though varying in form, asserted the proposition, that if the jury believed the evidence, they should find in favor of defendant on his plea. The court refused to give any of these charges, and defendant duly excepted.

The jury having found in favor of the State on the plea of former jeopardy, defendant pleaded not guilty, and went to trial before a jury. The bill of exceptions does not state that it contains all the evidence delivered on this trial.

After the argument of counsel, the court delivered a lengthy written charge to the jury, which could not well be set out without unnecessarily cumbering the report of the case. The bill of exceptions recites that "to this charge, and each part thereof separately, defendant excepted;" but it does not contain any specific objection to particular parts of the charge.

The defendant then asked the court to give the following written charge to the jury: "If the jury believe from the evidence that the defendant had a general felonious intent, and desired to commit murder, or other high crimes generally, and acted notoriously, and made threats and other demonstrations of a belligerent character, evidencing a reckless disposition to violate law and order, even then they can not find defendant guilty, unless he made an actual assault upon the person of Andrew J. Baxley to murder him." The court refused to give this charge, and defendant excepted.

Defendant was convicted, and sentenced to ten years in the penitentiary. He now appeals, and assigns for error—1st, that the court erred in the charge given and the charges refused as to the plea of former jeopardy; 2d, the general charge of the court; 3d, the refusal to give the last charge asked by defendant.

Jasper N. Haney, for appellant.—1. The judgment re-

versing this case when it was here before, is not tanta-
mount to deciding that defendant had not been in jeop-
ardy. The plea of former jeopardy was pleaded in that
case, and in the opinion of the supreme court it is ex-
pressly stated that the court intended no expression of
opinion on the plea, or the facts necessary to sustain it.
To appeal was the only way defendant could rid himself
of the effects of the erroneous ruling of the court below.
On that appeal, this court could only reverse. The court
did hold that it was the duty of the court below to submit
the question of former jeopardy to a jury on a proper plea
being filed. This court then had the facts before it as to
the exclusion of the juror Parsons, and they were fully set
out in the bill of exceptions. The court reversed that case
and sent it back for trial, knowing that this very question
would arise on a new trial. It is the uniform custom of
the court, on reversing a case, to settle all questions on the
record which will probably arise on the new trial. If the
reversal was intended to decide that on the facts set forth
there had been no jeopardy, how easy would it have been
for the court to have said, "upon the facts disclosed in the
bill of exceptions as to the exclusion of the juror Parsons,
it is plain that defendant has not been in jeopardy." The
silence of the court on this point is suggestive of the be-
lief, to say the least of it, that the court did not by any
means consider its judgment as settling, or even touching
the question.

It is true, the jurors had not been sworn in chief, but
they had been impanneled and selected. The defendant
had pleaded not guilty, and he had the right to be tried by
these jurors; he was entitled to take his chances for liberty
with these very triers. He had gone on so far that he
could not withdraw; his case and his liberty were then in
the hands of the court and this jury. Defendant could
not, without the permission of the court, withdraw his case
from this very jury. If he was thus in the power of the
jury and the court, can it be said he was not in jeopardy?
So jealous is the law of life and liberty, that it will not de-
prive any man of his *chances* of life and liberty at the

hands of a jury to whom his case has been entrusted. Is the principle as to the chance allowed a prisoner before a jury sworn and charged with his case, different because the jury has not been charged with the case? It is the *chance* of acquittal that the law says a defendant shall not be deprived of. This chance the defendant had the right to demand at the hands of the twelve jurors selected, including Parsons.

JOHN W. A. SANFORD, Attorney-General, *contra.*—The jeopardy of the accused begins when a traverse jury has been impanneled and sworn to try the issue between him and the State. As neither of the first two pleas alleged that a judgment had been entered or a verdict had been rendered, or that even a jury had been impanneled and sworn in the case, the demurrer to each of them was properly sustained.—1 Bish. Cr. Law, § 659; *Blackwell v. The State*, 9 Ala. 79; *Williams v. The State*, 3 Stew. 476.

The court did not err in its charge to the jury upon the trial of the issue of former jeopardy.—Authorities *supra.*

The action of the court below upon a former trial of this case in excluding a juror for a cause not mentioned in the Code, was revisable at the instance of the prisoner by this court. All reversible errors are of equal importance. No class confers higher privileges on the accused than another. All cause the judgment against him to be reversed on his appeal to this tribunal. But the reversal of the judgment at his instance does not discharge the prisoner, or exempt him from another trial for the same offense.—*Jeffries v. The State*, 40 Ala. 384; *State v. Abram*, 4 Ala. 272; *Cobia v. The State*, 16 Ala. 781; *Phil v. The State*, 1 Stew. 31; *State v. Hughes*, 2 Ala. 102.

PECK, C. J.—The eleventh section of the bill of rights declares, "that no person shall, for the same offense, be twice put in jopardy of life or limb."

To constitute jeopardy, in the sense here used, it is not necessary there should be an actual conviction or acquittal.

The rule on this subject, as I understand it, is, that in a

case of felony a prisoner is put in jeopardy, in a legal sense, when he is put upon his trial on a good indictment, has been arraigned and pleaded not guilty, or the plea of not guilty has been entered for him by the court, and a lawful jury is duly impanneled and sworn *and charged with his trial.*

There is no formal, uniform mode with us in charging a jury with the trial of a prisoner. The usual way is, when the jury is impanneled and sworn, and the trial is *actually* ready to proceed, for the solicitor, before any witness is examined, to read the indictment to the jury. When this is done, the prisoner is then in jeopardy.—1 Bish. on Crim. Law, § 856.

A solemn form of charging the jury with the trial of a prisoner, may be seen in Wharton's fourth and revised edition of his American Criminal Law, § 590.

When the jury is duly charged with the trial of a prisoner, he is entitled to have a verdict returned by them, and they can not be discharged by the court, unless in cases of pressing necessity; and if discharged without such necessity, it is equivalent, so far as the prisoner is concerned, to a verdict of acquittal, and he can not be subjected to another trial.'

In the case of *Ned, a slave, v. The State,* (7 Porter, 187,) it is decided, " that courts have not, in capital cases, a discretionary authority to discharge a jury after evidence given.

" 2d. That a jury is, *ipso facto,* discharged by the termination of the authority of the court to which it is attached.

" 3d. That a court does possess the power to discharge a jury in any case of pressing necessity, and should exercise it whenever such a case is made to appear.

" 4th. That the sudden illness of a juror, or of the prisoner, so that the trial can not proceed, are ascertained cases of necessity, and that many others exist, which can only be defined when particular cases arise.

" 5th. That a court does not possess the power, in a cap-

ital case, to discharge a jury because it will not or can not agree."

We hold, that what is here said applies equally to cases of felony; that said eleventh section of the bill of rights embraces every case of felony, without regard to the punishment to be inflicted.

The two first special pleas pleaded in this case were clearly insufficient, because they do not state that the jury had been sworn, but only that they had been impanneled. This, without more, was not enough.

The improper discharge of the juror by the court on the first trial of the defendant, for the reason given in the bill of exceptions taken on that trial, after said juror had been accepted by the State and the prisoner, without his consent, and against his objection, was an error, for which the conviction was, at the last January term of this court, reversed and the case remanded for another trial. This did not entitle him to be discharged; if it had, the case would not have been remanded for another trial.

In the case of *Williams v. The State*, (3 Stewart, 454,( a case very much like this, it is held, that where a juror is erroneously discharged, and the prisoner is convicted, a reversal of the judgment does not discharge him from a second trial. The demurrer to these two pleas was, therefore, rightly sustained.

2. Clearly there was no error in the charge given, or in refusing the charges asked, as to the plea of former jeopardy. The said record did not show that defendant had been put upon his trial before a jury that was impanneled, sworn, and charged with his trial, and, without his consent, and in the absence of any pressing necessity, had been discharged without rendering a verdict; consequently, it did not appear that defendant had been put in legal jeopardy. The jury on said issue found a verdict for the State, in conformity with the charge of the court; thereupon the defendant pleaded not guilty, and the trial proceeded on that plea. After the evidence was closed, the court, at the instance of the State, charged the jury in writing. To this charge, the bill of exceptions states, the

defendant excepted, " and to each part thereof." This is a mere general exception, and does not disclose any particular error or errors in the said charge. The said charge appears to be full, and intended to instruct the jury on the entire case.

I have carefully examined this charge, and although not as precise and perspicuous as it might have been, I am not prepared to say it contains any substantial error.

· None of the evidence is set out in the bill of exceptions; it is impossible, therefore, to determine that this charge is erroneous. The rule is, that the appellant must make the record affirmatively show error.—*Eskridge v. The State*, 25 Ala. 30, and *Butler v. The State*, 22 Ala. 43.

There was no error in refusing the last charge asked by defendant. As the evidence is not set out, we can not know what was the character of the defendant's intent, but in favor of the ruling of the court we will presume that the charge was abstract, and not authorized by the evidence. When a party excepts to the refusal of a charge asked, he must show, by his bill of exceptions, that it was not abstract.—*Morris v. The State*, 25 Ala. 57.

The judgment of the court below must be affirmed.

[NOTE BY REPORTER.—The opinion in this case was delivered at the June term, 1871. The report of it was omitted from the last volume on account of a want of space.]