189 So.2d 861

**CASUALTY RECIPROCAL EXCHANGE**

**v.**

**Robert O. WALLACE et al.**

**6 Div. 278.**

Supreme Court of Alabama.

Aug. 25, 1966.

Rehearing Denied Sept. 22, 1966.

62

Rives, Peterson, Pettus & Conway, and Edgar M. Elliott, Birmingham, for appellee Grace Bright.

W. J. Sullivan, Jr., and Sadler, Sadler, Sullivan & Sharp, Birmingham, for appellant.

MERRILL, Justice.

This is an appeal by Casualty Reciprocal Exchange, an automobile liability insurance company, from an adverse decree in a suit by it for declaratory judgment holding that a policy of liability insurance issued by it to Marvin E. Wallace affords coverage to Robert O. Wallace for an occurrence on July 21, 1963.

The bill alleges that on the above date the insurer had in full force and effect a policy of automobile liability insurance issued to Marvin E. Wallace, the father of Robert O. Wallace, describing the insured vehicle, a 1958 Dodge automobile; that on said date Robert drove an MG automobile, owned by Mrs. Elizabeth Parker, to the Green Valley Country Club in the community of Hoover, Jefferson County, Alabama, parked it on the parking lot regularly provided by the Country Club for the use of its members, left it unattended and thereafter the MG rolled from the lot down an embankment onto the concrete deck of the swimming pool of the Country Club, injuring Mrs. Grace B. Bright who was sitting in a chair upon the deck; and as a result of this occurrence, Mrs. Bright has filed suit at law for damages against Robert and the Green Valley Country Club. After the institution of the present action for declaratory judgment, Bob I. Bright, the husband of Grace, filed a suit at law for damages for the "loss of services," medical expenses, etc., suffered and incurred by him as a result of the injuries of his wife. It was stipulated by all of the parties that the decree of the declaratory judgment suit would be binding upon the said parties with regard to Bright's suit.

The complainant insurer joined as parties respondent Robert O. Wallace, Mr. and Mrs. Bright, and Green Valley Country Club. Robert failed to appear in the cause and suffered a decree pro confesso to be rendered against him. As for the Brights and Green Valley, the chancellor decreed that the insurance policy in question does afford coverage to Robert for the occurrence on July 21, 1963; that the insurer is liable to pay to the extent of its coverage under the policy any judgment rendered against Robert in the suits at law filed by Mr. and Mrs. Bright; and that because of the decree pro confesso, the insurer is under no duty to defend Robert O. Wallace in such suits at law.

Robert's connection with the policy of insurance involved arises from the language therein whereby the insurer bound itself to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of: A. bodily injury * * * sustained by any person; * * * arising out of the ownership, maintenance or use of the owned automobile (a 1958 Dodge) or any non-owned automobile, * * *." It defined an "insured," in connection with a non-owned automobile, as "any relative," and stated that "relative" meant "a relative of the named insured who is a resident of the same household."

The chancellor found that at the time of the accident for which coverage is sought to be denied, Robert O. Wallace was a resident of his father's household.

The coverage afforded to a relative is with respect to a "non-owned automobile," which the policy says means "an automobile * * * not owned by or furnished for the regular use of either the named insured or any relative, * * *."

The MG was owned by Mrs. Elizabeth Parker who worked at an establishment with Mrs. Mary Wallace, the mother of Robert and wife of Marvin. Robert's regular employment was that of an automobile mechanic. The MG was in a state of disrepair, and Mrs. Parker prevailed upon Robert to repair it at his home for a much smaller charge than that made by regular automobile repairmen.

The chancellor found that the MG was furnished to Robert to repair—not for his regular use—and that he did not in fact regularly use the vehicle.

In affording coverage to a relative with respect to a non-owned automobile, the policy restricts it as follows: "provided his actual operation of (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission."

On the day of the accident, the Wallace family car was unavailable. Robert's sister, Sharon, wanted to go swimming at the Club, so Robert consented to drive her there in the MG. It was shortly thereafter that Mrs. Bright was injured when the MG rolled upon her from the parking lot. All concerned agree that Mrs. Parker made no statement as to whether Robert could or could not use the automobile.

The court found that Robert "reasonably believed" his use of the automobile on the occasion in question was with Mrs. Parker's permission.

The appellant argues through assignments of error 12 and 13 that the court erred in failing to hold that the Brights' rights under the policy are derivative only, and can rise no higher or greater than Robert Wallace's rights under the policy. The appellant says that since a decree pro confesso was taken against Robert, the insured, then Mr. and Mrs. Bright, the tort claimants, can have no rights under the policy because their rights must be derived from Robert. The final effect of appellant's argument is that a decree pro confesso rendered against an insured in a declaratory judgment suit brought by the insurer cuts off all rights of the injured parties. We think this argument is manifestly unsound, and appellant cites us to no apt case in support of it. There is authority in the opposite direction. In Hawkeye-Security Insurance Company v. Schulte, 7 Cir., 302 F.2d 174, the court was faced with a situation similar to the one at bar. We quote a portion of that opinion as follows:

"Appellee argues that through the default of John Schulte, Jr. and John Schulte, Sr. the allegations of the complaint are to be taken as true. This argument assumes that they were the only parties entitled to contest the allegations of the complaint. Since appellant was a proper party, the default of these two defendants may not preclude appellant's right in this respect. See Vale v. Bonnett, 89 U.S.App.D.C. 116, 191 F.2d 334 (1951); New York Casualty Co. v. Lewellen, 8 Cir., 184 F.2d 891 (1950).

"Appellee voluntarily brought appellant into this litigation as a party defendant. Appellant, being a proper party to an actual controversy with appellee, should be heard to assert any proper defense raised by his answer to the complaint. The district court erred in dismissing appellant from this suit."

In the instant declaratory judgment suit, the Brights had the right to defend. It was no concern of theirs whether Robert Wallace defaulted or not. They (the Brights)

were called to litigate. Because another respondent failed to appear cannot affect their right to resist the suit. Could the chancellor decree "coverage" for the Brights and at the same time hold that because of the decree pro confesso, the insurer did not have to defend Robert Wallace in suits at law? We think so since such a holding does not do violence to the "derivative rights" theory. The final decree does in fact hold that Robert is covered by the policy. As for the decree pro confesso rendered against Robert, the court had no alternative but to give effect to it. But the effect given it was not that Robert had no coverage, but that the insurer was not bound to defend him. This obligation to defend vel non was a matter in which the other respondents had no interest.

Granted, the insurer is on the horns of a dilemma—it does not have to defend Robert, but if a judgment is rendered against him, it must pay to the extent of the coverage. Any other holding would require us to say that an insured can default in a declaratory judgment suit and affect the rights of the other respondents.

The appellant cites Tit. 28, §§ 11, 12, Code 1940, and several cases interpreting the statutes, holding that an injured party's status is derivative and dependent upon the liability of the insurer to the assured under the contract. Employers Insurance Company of Alabama v. Johnston, 238 Ala. 26, 189 So. 58; Macey v. Crum, 249 Ala. 249, 30 So.2d 666. In the case at bar, the chancellor did not decree otherwise. He held "coverage" for Robert; but in view of the decree pro confesso, he held there was no duty to defend him. Once the court found that there was coverage for Robert Wallace, the rights of the appellees Bright to apply the proceeds of the policy to any judgment they might secure was beyond question.

The appellant argues that the case of Conold v. Stern, 138 Ohio St. 352, 35 N. E.2d 133, 137 A.L.R. 1003, is authority in support of his argument that the Brights

have no rights under the policy. In that case, the court held that the first plaintiff, corresponding to Robert Wallace in this case, was not covered in the policy, and that the second plaintiff, Conold, corresponding to the Brights, could not recover.

■ The *Conold* case is not applicable to the instant case. The chancellor did not hold that the Brights' rights were other than dependent on Robert Wallace's rights under the policy; but he did hold that there was coverage for Robert. In *Conold*, it was held in the first instance that there was no coverage for the insured. The trial court did not err in its holding as to these matters.

The appellant next argues that the court erred in sustaining the objection of the Brights to the offer of evidence against them of an extrajudicial signed statement by Robert Wallace, and taken by one Moore, an insurance adjuster. The court received the evidence against Robert as an admission, but since the Brights were not present at the taking of the statement, it held it was hearsay as to them. The appellant says, nevertheless, that the statement by Robert should be evidence against the Brights because the latter are claiming under or through him.

■ Conceding, without deciding, that the appellant is correct, the error was without injury because the court held that Robert was covered by the policy after considering the statement against *him*. When the court found Robert was covered, it would necessarily, under these circumstances, find the Brights were entitled to the protection afforded by the policy. Therefore, even if the court had overruled the objection of the Brights to the statement, the result would not have been changed because the court held that Robert was covered by the policy after admitting the statement in evidence as to Robert.

■ Appellant next claims error was committed when its witness, Mrs. Elizabeth Parker, in her deposition, was not permitted

to answer, as against timely objection by Mr. and Mrs. Bright, the following question:

> "Q. Did you do anything or say anything to Robert Wallace whereby he would reasonably believe that he had permission to drive the car himself out on the highway?"

This question suffers from a triple infirmity. It calls for (1) an opinion of the witness, (2) it inquires of the witness what another person does or does not believe, and (3) it calls for an answer on the ultimate issue. As to (1), ordinarily one cannot prove by a witness on direct examination his motive, purpose, or other mental operation, Low v. Low, 255 Ala. 536, 52 So.2d 218. As to (2), a witness may not answer as to the uncommunicated intent of another, Holmes v. Holmes, 212 Ala. 597, 103 So. 884. As to (3), the sustaining of objections to questions calling for a conclusion of the witness and invading the province of the jury is not error. Jackson Lumber Co. v. Butler, 244 Ala. 348, 13 So.2d 294. One of the issues framed by the pleadings was whether Robert Wallace reasonably believed he had the permission of the witness to drive her MG on the occasion in question.

■ But the appellant insists that the terms of the policy with respect to whether the user of the non-owned vehicle "reasonably believed to be with permission" of the owner should permit the question to be answered by Mrs. Parker. The argument is made that the language of the policy makes the question admissible. We are not persuaded that because of the phraseology of a policy of insurance, the laws of evidence are abrogated.

■ In assignments of error 16 and 17, appellant claims the court committed error in finding that Robert reasonably believed that he had permission of Mrs. Parker to use the automobile for his own purposes. It is not argued that the chancellor's finding was contrary to the weight of the evidence, and it must be remembered that this case was tried without a jury and evidence was given ore tenus. Under these circumstances, the presumption stated in Finney v. Studebaker Corporation of America, 196 Ala. 422, 72 So. 54, governs:

> "We think that the evidence in this case fully warranted the conclusion and finding upon the facts, by the trial court, sitting without a jury, but, as the evidence was ore tenus, or partly so, the trial court saw and heard the witnesses, and had an advantage over this court in considering and weighing the evidence, and we would not disturb the conclusion unless plainly contrary to the great weight of the evidence. * * *"

■ Assignment of error 31 is based on the court's sustaining the Brights' objection to the following question:

> "'Q. I am going to ask you one more question Mrs. Parker. Were you aware at the time you made these arrangements with Robert O. Wallace about repairing this car that it would be wrong to either drive the car without a license plate or let someone else drive the car without a license plate?"

The lower court was correct, for the rule in Alabama is that a witness may not testify to his own intent, motive, reason, belief, or the like. See McElroy, The Law of Evidence in Alabama, 2nd Ed., Vol. I, Section 102.07, and cases there cited.

■ By assignments of error 18 and 21, complaint is made that the court erred in finding that the MG was furnished to Robert to repair—not for his regular use, and also in finding Robert reasonably believed he had Mrs. Parker's permission to drive his sister to the Country Club. The evidence is clear the vehicle was furnished to Robert for the purpose of repairing it, and there was evidence from which the court could find, as it did, that Robert reasonably believed he had permission to use the vehicle. Here again, the rule stated just above in *Finney* is applicable.

There being no reversible error in the case, the decree is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.