The indictment charged the appellant, Jerry Odom, with the robbery of Leonard Farley, by taking some $900.00 in currency from him. The jury found the appellant guilty as charged and fixed punishment at ten years imprisonment. The trial court then entered judgment in accordance with this verdict.
Leonard Farley testified that about 7:00 in the evening of January 28, 1976, after returning from a cattle auction, he stopped at a bar known as Rose's Place on old Highway 78 West in Jefferson County, Alabama, to have a beer. Farley stated that he used to be a regular customer of Rose's Place, but had not been there for the past several years. Farley testified that he walked in, sat down in a booth, and ordered a beer. Several minutes later the appellant, who was a total stranger to Farley, came over and sat down in the booth with him. The appellant, according to Farley, asked Farley to buy him a beer, which Farley did, and also asked Farley to lend him $5.00, which Farley declined to do. The appellant, according to Farley, left the booth, but returned shortly thereafter in the company of Juanita Griffin. Farley bought her a beer also, and after a while, she got up on the stage table, removed her dress, and danced. The appellant, meanwhile, left the booth and walked over to the pool table. After dancing, Griffin returned to Farley's booth and offered to spend the night with Farley for $30.00, which Farley refused. Griffin then danced on Farley's table. Farley testified that Griffin then sat down next to him, and he put his hand on her leg, to which she responded, "Not in here" (R. p. 17). Griffin, according to Farley, asked that Farley pay her for dancing on the table, which request Farley refused. Griffin then got up from the booth and walked over to the pool table where the appellant was standing. Farley testified that a man (at the time unknown to Farley) named Eddie Joe Earnest then walked over to his booth and asked him if he would mind if he danced with Griffin, to which Farley replied, "Why sure, go on" (R. p. 17). Farley went to the restroom for a short time and then left via the front door. Farley testified that before he got to his truck the appellant said, "You're going to have to pay her for that [the dancing]." Farley turned around and saw the appellant and Griffin standing in front of him. Farley told the appellant that he would go back in the bar and find out if it was customary to pay for such things, and if it was, then he *Page 279 
would pay. The appellant said that it would cost $15.00. Farley pulled out an open, average size pocket knife and proceeded to walk back to the front door, having to walk between the appellant and Griffin. As Farley walked between them someone (not the appellant) hit him in the side of the head, knocking him to the ground (R. p. 22). Farley testified that the appellant and Earnest held his arms and that Griffin tried to get his billfold from his back pocket, so he kicked her. Then he kicked the appellant. Both Earnest and the appellant lifted Farley off the ground, and one of them got his billfold (R. p. 25). In removing the billfold, they tore his pants pocket (R. p. 26). After appellant and Earnest got the billfold, they held Farley's hands and kicked him, causing a severe cut on Farley's eye and excessive swelling and bruising around his face. Farley testified that the next thing he remembered was standing in the doorway of Rose's Place, asking for help. Farley received some aid inside and had someone call the sheriff (R. p. 35). Later Farley was taken to the hospital. Farley stated that there was $900.00 taken from him which he had received selling some cattle.
Evilou Haynes was the cashier at Rose's Place on the night of January 28, 1976. Haynes testified that she saw Eddie Joe Earnest and the appellant talking right before Farley went to the restroom. She then saw Farley leave, followed by the appellant, Juanita Griffin and Eddie Joe Earnest. Haynes testified that a short time later, Farley came back in the bar with his face bleeding and then someone called the sheriff's office which investigated the incident. Eddie Joe Earnest, according to Haynes, returned later that night and paid for a beer with a ten dollar bill which appeared to have blood on it. Haynes said she kept it and showed it to Deputy Creel later that evening.
Franklin Sanford was a customer at Rose's Place on January 28, 1976. He testified that he parked his car next to a car which he had seen Griffin in earlier that evening at Knight's Truck Stop where he was employed. Sanford also testified that the appellant, Griffin and Earnest followed Farley out the front door that night. Sanford heard a car scratch off in the parking lot shortly after Farley left. When Farley came back into the bar, he asked Sanford to look for his billfold and money in the parking lot. Sanford testified that while looking for the billfold he noticed that gravel from the parking lot was all over the hood of his car and that the car which was parked next to his was gone. This was the same car he had seen Griffin in earlier. Upon closer inspection Sanford discovered that one of his front headlights had been broken, apparently because the departing car was slinging gravel. The billfold was never found. Sanford then took Farley to the Jasper Community Hospital.
Juanita Griffin testified that she was with the appellant at Rose's Place on January 28, 1976, when someone told her that Farley wanted her to sit with him. She testified that Farley bought her a beer, and that they were then joined by the appellant. According to Griffin, Farley asked her to dance on the table, which she did twice, but he refused to pay her. Farley, according to Griffin, then left the bar and she (Griffin) left also to go next door to see the manager of Rose's Place about employment. Griffin testified that Farley grabbed her by the arm outside in the parking lot, wanting her to go with him. The appellant then came outside and saw Farley holding Griffin at which time Farley swung a knife at the appellant. The appellant, according to Griffin, then hit Farley once, knocking him down. Griffin went back inside to get her coat and purse. When she came back outside, the appellant was waiting for her in the car. As they left, according to Griffin, Eddie Joe Earnest was standing next to where Farley was lying on the ground. She testified that neither she nor the appellant took any money from Farley. Griffin also testified that the appellant and Eddie Joe Earnest had known one another before January 28, 1976.
The appellant's testimony as to what happened was the same as Griffin's. The appellant also testified that he never asked Farley to loan him any money. *Page 280 
 I
Appellant contends that he was denied due process and equal protection of the law because the indictment was not read to a duly impaneled and sworn jury. In connection with this, appellant contends that jeopardy has not attached since the indictment was not read to a duly impaneled and sworn jury and since there was no plea to the indictment against the appellant made known to the jury.
The record at page 187 discloses the following:
"ARRAIGNMENT
 "THE STATE } Indictment for Robbery VS. } JERRY ODOM alias } JERRY WAYNE ODOM, alias } Honorable Joseph Jasper, JERRY W. ODOM } Judge Presiding
 "This the 21st day of May, 1976, came Earl C. Morgan, District Attorney, who prosecutes for the State of Alabama, and also came the defendant in his own proper person and by his attorney, Maurice Rogers, and the defendant being duly arraigned upon the indictment in this cause, for his plea thereto says that he is not guilty and leave of the Court is hereby granted to defendant, hereafter but before trial day, to interpose any special pleas which the defendant had the right as a matter of Law to interpose prior to his plea of not guilty and case is set June 8, 1976, and passed from time to time to December 13, 1976, for trial."
Furthermore, on page 188 of the record we find:
"JUDGEMENT ENTRY
 "THE STATE } VS. } Indictment for Robbery JERRY ODOM, alias } JERRY WAYNE ODOM, alias } Honorable Charles Crowder JERRY W. ODOM } Judge Presiding
 This the 13th day of December 1976, came Earl C. Morgan, District Attorney, who prosecutes for the State of Alabama, and also came the defendant in his own proper person and by his attorney, Maurice Rogers, and thereupon came a jury of good and lawful persons, to-wit: J.P. Guthrie, and eleven others, who being duly impaneled and sworn according to Law, before whom the trial of this cause was entered upon and continued from day to day and time to time, said defendant being in open Court at each and every stage and during all the proceedings in this cause; defendant enters plea of not guilty.
 "This the 14th day of December, 1976, said jurors upon their oaths do say, `We the jury find the defendant guilty of robbery as charged in the indictment and fix the punishment at imprisonment in the penitentiary for a term of 10 years.'
 "This the 14th day of December, 1976, said defendant being in open Court with his attorney, Maurice Rogers, and being asked by the Court if he had anything to say why the judgment of the Court and sentence of the Law should not be pronounced upon him says, `I didn't rob him.' It is therefore considered by the Court, and it is the judgment of the Court that said defendant is guilty of robbery as charged in the indictment, in accordance with the verdict of the jury in this cause, and it is the judgment of the Court and sentence of the Law that the defendant, the said Jerry Odom alias Jerry Wayne Odom alias Jerry W. Odom, be imprisoned in the penitentiary of the State of Alabama for a term of Ten (10) years, and it is ordered by the Court that the defendant be credited with all of this actual time spent incarcerated in the Jefferson County Jail pending trial of this cause unless he was serving time for another offense." [Emphasis supplied]
The record clearly indicates that the arraignment and trial proceedings were conducted without irregularity, although there is no actual showing that the indictment was read to the jury before any witnesses were examined.
The usual mode of charging a jury with the trial of a defendant is the reading of the indictment to them by the prosecuting attorney during his opening statements. Lyman v.State, 47 Ala. 686. Opening *Page 281 
statements in a trial proceeding are not usually transcribed, and thus will seldom appear in the record. See Title 13, Section 262, Code of Alabama 1940.
In Jones v. State, Ala.Cr.App., 348 So.2d 1116 (1977), this Court was presented with facts similar to the ones in this case. In Jones, supra, this Court stated:
 "If, however, the jury is not so charged, it is incumbent of a defendant to bring such omission to the attention of the trial court by prompt objection or as an asserted ground in a motion for new trial. See Rodgers v. State, Ala.Cr.App., 332 So.2d 739, cert. den., Ala., 332 So.2d 746. Where, as here, there was no objection entered in the trial court below, it will be presumed that the indictment was read to the jury or that they were in some other way informed of the charges against the defendant before any witness was examined. McGuire v. State, 76 Miss. 504, 25 So. 495. See Nick v. United States, 122 F.2d 660 (8th Cir. 1941), 138 A.L.R. 791."
Therefore, since no objection was made in the trial court, nor was this issue presented by other motion, it is presumed that the indictment was read to the jury or that they were in some other way informed of the charges against the defendant before any witness was examined. It is not necessary that the indictment be formally read to the jury to afford due process.Robles v. United States, 279 F.2d 401 (9th Cir., 1960), cert. den., 365 U.S. 836, 81 S.Ct. 750, 5 L.Ed.2d 745 (1961).
 II
Appellant contends that the trial court erred in allowing the victim, Leonard Farley, to testify as to the uncommunicated intent of the appellant. From the record (R. pp. 40, 41):
 "Q. Now, of that, what you have testified what happened to you, what did Jerry Odom do to you that you actually saw Jerry Odom do?
 "A. He run up first, as I told you while ago, to get my billfold and I kicked him. Whenever this fellow turned me up on my side, he gets down there with him and he —
 "MR. RODGERS: We object to what he was going to do as giving a judgment what the man's intentions were on approaching him and move to exclude that.
 "THE COURT: I didn't understand him to say that. Overruled.
"MR. RODGERS: We except." [Emphasis supplied]
A witness cannot testify as to the uncommunicated intent of another person. Casualty Reciprocal Exchange v. Wallace,280 Ala. 61, 189 So.2d 861; Holmes v. Holmes, 212 Ala. 597,103 So. 884; Shadle v. State, 280 Ala. 379, 194 So.2d 538. In each of the above cited cases, however, the questions asked by counsel called for the witness to testify as to the uncommunicated intent of another person. As can be seen upon a reading of the record above shown, counsel's question did not call for such a response. The question asked of the witness was, "What did Jerry Odom do to you that you actually saw Jerry Odom do" (R. p. 40). The witness prefaced his answer with, "[A]s I told you while ago." The witness was referring to the following testimony which he had given earlier (R. pp. 25, 26):
 "Q. At this time, what did the defendant, Jerry Odom, do?
. . . . .
 "A. Well, when he pulled me up here, I was laying on my billfold. He pulled me up. Eddie is he. He had his hand down there and then Jerry Odom run up and they was both there. Which one of them got my billfold I don't know. They was there working at the same time.
I can't tell you." [Emphasis supplied]
The witness clearly was testifying as to physical movements of appellant within his own knowledge, and not as to the uncommunicated intent of another person. No error is shown.
 III
The appellant contends that his conviction was based upon circumstantial evidence which failed to meet the required *Page 282 
standards for consistency with guilt and inconsistency with innocence. The sufficiency of the evidence presented by the State is not before us for review since no motion to exclude the evidence was made by appellant, the affirmative charge was not requested in writing, and there was no motion for a new trial. Eady v. State, 48 Ala. App. 726, 267 So.2d 516; Grant v.State, 46 Ala. App. 232, 239 So.2d 903; Robinson v. State,46 Ala. App. 684, 248 So.2d 583.
 IV
Appellant contends that the State failed to prove, through any evidence, that Jerry Odom had a larcenous intent to steal any property of Leonard Farley.
It is an essential factor in robbery "that the taking should, at the time of manucaption, have been with a larcenous intent."Kennedy v. State, 208 Ala. 66, 93 So. 822. The question of intent is one for the jury and the verdict of the jury resolved this issue against appellant. Root v. State, 247 Ala. 514,25 So.2d 182.
The trial court properly submitted this cause to the jury.Mays v. State, Ala.Cr.App., 335 So.2d 246; Tarver v. State,53 Ala. App. 661, 303 So.2d 161; Calhoun v. State, Ala.Cr.App.,346 So.2d 39 (1977).
The judgment below is
AFFIRMED.
All the Judges concur.