This is a child custody case.
The trial court, after an ore tenus hearing, awarded custody of a three year old child to the child's paternal aunt and her husband who had intervened in the divorce proceedings. The mother appeals, contending the trial court erred in failing to award custody to the mother.
The maternal grandparents, also intervenors, appeal, contending the trial court erred in failing to award custody to the maternal grandparents.
The primary issue is whether the trial court erred in the custody award. In addition, the mother urges error in the trial court's action requiring her to contribute to the child support and in certain evidentiary rulings. We find no reversible error and affirm.
At the outset, we note that it is a well settled legal principle that when testimony is taken ore tenus, there is a strong presumption that the trial court's ruling with *Page 53 
regard to child custody is correct. The trial judge is in a position to observe and hear the evidence personally and we cannot reverse on appeal unless the ruling is so unsupported by the evidence that it constitutes an abuse of judicial discretion, and is therefore clearly and palpably wrong. Julianv. Julian, 402 So.2d 1025 (Ala.Civ.App. 1981); Hunley v.Houston County, Alabama, Department of Pensions and Security,365 So.2d 81 (Ala.Civ.App. 1978).
In child custody cases especially, the perception of an attentive trial judge is a critical factor and the reviewing court cannot substitute its judgment for that of the trial court if there is any reasonable inference presented from the evidence that the trial court's decree was correct. Williams v.Williams, 402 So.2d 1029 (Ala.Civ.App. 1981); Smith v. Smith,334 So.2d 915 (Ala.Civ.App. 1976).
Viewing the record with the attendant presumptions accorded the trial court, the following is pertinently revealed.
The complaint for divorce was initiated on May 14, 1980 by the wife. She alleged one child was born of the marriage and further averred that she was the fit and proper person for the full care, custody and control of that child.
On June 19, 1980, the husband filed his answer and counterclaim denying that the wife was the fit and proper person to have custody of the child and further that he was the fit and proper person to have custody.
The trial court issued an order pendente lite on June 27, 1980 awarding the wife temporary custody and the husband reasonable specified visitation rights. The trial court also awarded child support pendente lite and awarded to the husband the residence pendente lite. The wife was required to preserve all assets and was prohibited from incurring debts against the assets. Both parties were also ordered to refrain from harassing, threatening or intimidating the other.
On August 28, 1980, a petition and motion to intervene was filed by Larkin DeShazer and Charlene DeShazer, the parents of the wife. The DeShazers averred that neither the husband nor wife were the fit and proper persons to have custody of the child and that custody should be awarded to them, the maternal grandparents.
On September 8, 1980, the trial court granted the maternal grandparents' motion to intervene and invited other parties who desired to intervene to do so no later than September 23, 1980. He also ordered the Department of Pensions and Security to investigate all of the parties concerned as to their fitness as custodians of the child. The trial judge set the cause for hearing in January, 1981.
Cheri Lynn Tucker and Lawrence Wayne Tucker, the paternal aunt of the child and her husband, filed a motion and petition to intervene on September 15, 1980, alleging that the maternal grandparents were not the fit and proper persons to have the care and custody of the child. The Tuckers further averred that they were the proper persons to have custody of the child.
On September 22, 1980, the husband filed a petition for rulenisi alleging that the wife came into the home while he was absent and without his permission removed certain items of personal property.
The wife then filed a petition for modification of orderpendente lite on September 29, 1980, seeking attorney's fee, clothes for the minor child, and a denial of the husband's visitation rights. Also on September 29, 1980, the wife filed a petition for rule nisi alleging nonpayment of child support, failure of the husband to divulge the place of visitation, removal or damage of furniture from the home, and the husband's harassment of the wife. On October 6, 1980, the husband filed his answer to the wife's petition and a cross petition to modify order pendente lite denying allegations of the wife and alleging that the wife threatened to take action to ensure that neither the husband nor his parents could see the child, including the wife's threat to run away with the child. The husband also sought custody for himself, the Tuckers or the Department of Pensions and Security. *Page 54 
The trial court granted the Tuckers' motion to intervene on October 6, 1980, and ordered the Department of Pensions and Security to investigate the background of each of the parties involved. On October 8, 1980, the trial court heard arguments relative to the petition of the wife and the answer and cross petition of the husband and ordered temporary custody of the child to the wife. The trial judge reserved ruling on the petitions for rule nisi. Pursuant to an agreement of the parties, the judge ordered the wife on November 5, 1980 to return to the husband certain items of personal property and allowed the husband to move back into the residence along with furniture and furnishings. On November 7, 1980, the court ordered the wife to deliver the child to the husband at a specified time and place and required the husband to return the child at the same location on a specified date.
After the conclusion of the interim motions and orders, the case came on for final hearing in January, 1981. After one and one-half days, the trial court entered a decree declaring a "mistrial," continued the case, and reassigned it because of alleged misconduct of the wife during the course of the trial. The judge then ordered that temporary custody be placed in the maternal grandparents, the DeShazers. Under this arrangement, the husband was to have the same visitation rights as previously ordered and the wife the same visitation rights as the husband to be exercised on alternating weekends with the husband. It was also ordered by the trial court that the maternal grandparents prevent either party from having visitation except as ordered.
The case was reassigned to another trial judge who, after anore tenus hearing, entered a final judgment of divorce on December 9, 1981. The trial judge specifically found that neither the wife, nor the husband, nor the maternal grandparents were the proper parties to have custody. The trial court determined that the intervenors, Cheri Lynn Tucker and Lawrence Wayne Tucker, the paternal aunt and uncle were "meet and proper persons and the only ones present before [the] court to be entrusted with the upbringing, care and custody" of the child.
The trial court further ordered the husband to pay child support in the amount of $250 per month and that the wife pay child support in the amount of $100 per month.
The mother and father were awarded certain visitation privileges which are not in issue.
On June 6, 1982, the wife filed a motion for new trial or in the alternative amendment of the final judgment. On January 7, 1982, the maternal grandparents filed a motion for new trial or in the alternative amendment of judgment. On January 19, 1982, the wife filed an amended motion for new trial. On January 22, 1982, the trial court denied all motions. Thereafter, the wife and maternal grandparents appealed.
A review of the record reveals a marriage with a history of many problems. There is uncontradicted testimony of drug use by both husband and wife that continued from high school at least up until the time of trial. There was evidence that the wife took prescription pads from a doctor's office without permission and that both husband and wife used them to obtain drugs illegally. There was evidence presented that the husband and wife used drugs in the presence of their child and that neither objected to other people using drugs in the marital home when minor children were present.
There was evidence tending to establish that the husband was subject to violent fits of temper and that he physically abused his wife.
There was also evidence presented that alleged homosexual behavior on the part of the wife, although it should be noted that the evidence came mostly from testimony of the husband and from witnesses who never actually had firsthand knowledge of any such behavior. There was evidence that tended to establish that several of the husband's friends had criminal records involving drug related offenses.
Needless to say, neither party's behavior improved once divorce proceedings were initiated. *Page 55 
They harassed each other, took property from one another, and violated court orders. The wife's testimony has many inconsistencies and both husband's and wife's testimony is contradicted by evidence from other witnesses. And although it is not contained in the record for this appeal, one of the parties did something that provoked the first trial judge to declare a mistrial and reassign the case to another judge.
The evidence concerning the maternal grandparents involves their disobeying the court's order by allowing the wife to move in with them and live in the house continuously with the child. There is some evidence that the grandmother accused the husband of sexually abusing the child during the husband's visitation period. However, the evidence also strongly tends to show that the grandmother acted inconsistently in regard to these accusations. In addition, there was evidence that the grandparents and the wife had disagreements as to the approach to be taken in disciplining the child. It was also uncontradicted that the child attended day school eight and one-half hours five days a week while the grandparents and the wife worked. The wife also testified that she planned to continue living with the maternal grandparents no matter who was awarded custody.
The only negative evidence presented in regard to the Tuckers, who were ultimately awarded custody concerned headaches that Mr. Tucker experienced as a result of an automobile accident and a psychological report in connection with the headaches. The report, which was introduced into evidence, stated that Mr. Tucker had "passive-aggressive" tendencies and exhibited "covert hostility," although nothing was pointed to in relation to his past behavior that exhibited these characteristics.
On the positive side, it was shown that the Tuckers were involved in many civic and community related activities, and that Mrs. Tucker would be at home full time.
 I
The wife, through able counsel, contends that the trial court placed undue weight on the wife's past history of misconduct in determining unfitness and that the trial court did not afford her the presumption that a natural parent has a prima facie right to custody in a contest for custody with a third person. The foundation of her argument is that the rights of a natural parent should prevail over any third party when child custody is at issue. This theory is true, as far as it goes. However, the controlling principle in child custody cases is the best interest of the child. Palmer v. Pierce, 387 So.2d 215
(Ala.Civ.App. 1980); Zimmerman v. Gibbs, 384 So.2d 1115
(Ala.Civ.App. 1980); Hunley v. Houston County, AlabamaDepartment of Pensions and Security, supra; Crews v. HoustonCounty Department of Pensions and Security, 358 So.2d 451
(Ala.Civ.App.), cert. denied, 358 So.2d 456 (Ala. 1978).
This court stated in Palmer v. Pierce, supra, that while "it is true that a natural parent has a prima facie right under the law to custody of his or her children, the primary consideration in a child custody case is that the determination be based on the best interest and welfare of the child. That determination must come from the evidence and each case must be decided on its own facts." Given the facts of the instant case, we find that the trial court had sufficient evidence to support its denial of custody to the wife or the maternal grandparents and justify its award of custody to the intervenors, Mr. and Mrs. Tucker.
We also reject the wife's contention that undue weight was placed on her past misconduct in determining her fitness as to custody of the child. It is plainly obvious that in order to determine the best interest of the child, the conduct of the parties petitioning for custody must be examined. The conduct of the child's custodians is bound to have a substantial impact on the welfare and well being of the child.
This court said in Crews v. Houston County Department ofPensions and Security, *Page 56 
supra, that in "order to determine if a change in the child's custody is necessary to adequately protect the best interests of the child, a trial court may examine the conduct and activities of the parent as well as the environment, health and circumstances of the child." After a review of the record, we cannot say that the trial court erred in examining the wife's past history of drug use and various allegations of misconduct. We will even go so far as to say that a relevant determination of custody could not have been made in the instant case without such an examination.
We therefore find no error in the trial court's award of custody.
 II
The mother next contends the trial court erred in requiring the mother to contribute $100 a month to the child's support. The mother relies on the primary duty doctrine which holds that it is the father's primary legal and moral duty to support his minor child, and that the mother can be compelled to contribute to this support only when the father is incapable of providing the support. See, Brock v. Brock, 281 Ala. 525, 205 So.2d 903
(1967); Womble v. Womble, 56 Ala. App. 318, 321 So.2d 660
(1975).
We note initially that "the authority to order contribution of the mother to the support of her children has been expressed many times by our appellate courts." [Citations omitted.] Tubbv. Middlebrooks, 379 So.2d 1272, 1274 (Ala.Civ.App. 1979),cert. denied, 379 So.2d 1274 (Ala. 1980).
In the instant case, the issue is whether the trial court may order the mother to contribute to the child's support absent a showing the father is incapable of providing support.
This issue was recently addressed by this court in Jenkins v.Jenkins, 418 So.2d 137 (Ala.Civ.App. 1982). In Jenkins, the custodial parent, the father, sought support from the mother for their minor child. The father admitted he was financially capable of providing for the child's basic needs, but that the child would be directly benefited by contributing support from her mother.
The mother in Jenkins, as in the instant case, relied onWomble v. Womble, supra, which restated the primary duty doctrine. However, in Jenkins, as in this case, this court noted that our decisions holding the mother can be compelled to contribute support have been cited with approval by the Alabama Supreme Court. See Board of Trustees of the Policeman's andFireman's Retirement Fund v. Cardwell, 400 So.2d 402 (Ala. 1981) (citing Collier v. Collier, 57 Ala. App. 208,326 So.2d 769 (1976)). We do not hesitate then in holding that a showing of a lack of total supportive ability, is not necessary in order to compel the mother to contribute to her child's support. Jenkins v. Jenkins, supra.
Furthermore, we reiterate that "[t]he issue of child support should not be viewed as a contest between the parents. The concern of the court must be the best interest of the child whose welfare is at stake. Its strict interpretation of our statements in previous cases might lead to a denial of contribution of needed child support by a non-custodial mother financially able, we refute such interpretation. Such strict adherence does not serve the best interest of the child."Jenkins v. Jenkins, supra, at 140.
In this case, the mother earns $268 every two weeks, and is financially able to contribute $100 a month support to a child who requires about $400 a month according to the mother's own testimony. We therefore find no error in the trial court's direction that the mother pay support to her daughter, and we affirm that aspect.
 III
Appellant-mother further contends the trial court erred in sustaining a general objection to admitting the recommendation of an employee of the Department of Pensions and Security.
While reports and recommendations by the Department of Pensions and Security may be admissible, Kelley v. StateDepartment of Pensions and Security, *Page 57 366 So.2d 736 (Ala.Civ.App. 1979); Ala. Code § 12-15-65 (f) (1975), a trial court in child custody cases has wide latitude in the evidence it will consider. Worley v. Jinks, 361 So.2d 1082
(Ala.Civ.App. 1978), writ quashed, 361 So.2d 1089 (Ala. 1978). Furthermore, where the objection made at trial is general, as it was in the instant case, if any grounds are found to uphold the trial court's ruling, it will be upheld. See Crawford CoalCompany v. Stephens, 382 So.2d 536 (Ala. 1980); Cities ServiceOil Company v. Griffin, 357 So.2d 333 (Ala. 1978).
In this case, the recommendation at issue was based on a social worker's interview with the appellant-mother, and four or five visits to the day care center while the child was there. The social worker did not speak with the father, did not interview any neighbors of the mother's, did not conduct any investigation into an alleged arrest of the mother in New Orleans, and did not pursue any investigation into the mother's drug usage beyond the mother's own statements. A recommendation based upon such limited information could well fall within the rule that a witness must testify to facts and cannot express an opinion. See Wright v. Rowland, 406 So.2d 830 (Ala. 1981); C. Gamble, McElroy's Alabama Evidence § 127.01 (1) (3d ed. 1977). Although a variety of exceptions exists to that rule, a refinement of the general rule holds a witness may not testify as to his or her opinion upon the ultimate question, or the very fact in issue. Gulf Refining Company v. First Nat'l Bankof Mobile, 270 Ala. 351, 119 So.2d 1 (1960); Gamble, supra, at § 127.01 (3). Clearly, the social worker's recommendation as to who should have custody could have been an opinion on the ultimate fact.
A question which calls for a conclusion on the part of the witness invades the province of the fact finder, Jackson LumberCompany v. Butler, 244 Ala. 348, 13 So.2d 294 (1943), and sustaining objections to questions calling for conclusions of witnesses and invading the province of the fact finder is not error. Casualty Reciprocal Exchange v. Wallace, 280 Ala. 61,189 So.2d 861 (1966); Jackson Lumber Co. v. Butler, supra.
In Ford v. Ford, 54 Ala. App. 510, 310 So.2d 230, corrected,writ denied, 293 Ala. 743, 310 So.2d 234 (1974), this court upheld the trial court's refusal to admit a youthful offender officer's opinion as to who should have custody of the child. In that case, the officers had visited the mother's home, but had not visited the father's home. This court held the trial court properly refused to allow the witness to state his opinion upon the ultimate question. Ford v. Ford, supra.
In light of Ford v. Ford and the aforementioned cases, the trial court had grounds to sustain the objection to the social worker's recommendation. Even if such grounds did not exist, we could not say that denying admission of the recommendation constitutes reversible error. Clearly, sufficient evidence exists which supports the trial judge's decision, so even if the trial court had erred, it would be harmless error. Hyde v.State Department of Pensions and Security, 382 So.2d 573
(Ala.Civ.App. 1980). See Rule 45, A.R.App.P.
We therefore find no error in the trial court's exclusion of the social worker's recommendation, and we affirm on that count.
In closing this court would be remiss in not sharing the following with interested parties.
The following appears in brief of one of the appellees:
 "As part of this introduction I am compelled to make the following statement, without reference to the merits of this appeal. I was not personally a participant in the pleadings, preparation or trial in this case. I have, however, read every page of this five volume appeal. This record is a tribute to the Bar and Bench of this state.
 "The case as is stated hereinbelow, involved allegation after allegation of misconduct both out of court and in court by parties and witnesses. The skill and demeanor of the attorneys in presenting these allegations and of the court in considering *Page 58 
and ruling thereon are worthy of the public's recognition. Circuit Judge Joe G. Barnard made the appropriate statement directed to the attorneys, but it applies as well to the three Judges who at various times were called upon to rule on various aspects of the case:
 "Gentlemen, I thank you all for your presentations. It was as professional and as fine a presentation of a very difficult case as any judge has had the privilege of sitting in. I thank you for it. . . .
 "I believe your Honors will come to this same conclusion as to the performance of both the Bar and the Bench upon your review of the Record on Appeal."
We would concur with the above and only add thereto that all appellants and appellees were ably represented on appeal, for which this court is grateful.
The wife has requested an attorney's fee for representation on appeal. The request is denied.
The case is due to be affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.