This is a child custody case.
In 1975 Victoria Douglass, the common-law wife of James H. Lewis, gave birth to a boy. The child was born in Butler County but soon thereafter mother, father, and child moved to Kansas. Two years later the mother abandoned her son and husband. Lewis and his son moved in 1979 from Kansas to Southport, Florida. In March 1981 Lewis's father retired and moved in with him. Prior to his father's retirement, Lewis would leave his son in Montgomery with the boy's maternal grandparents, Donald and Alice Douglass, from Monday to Thursday night. Thursday nights Lewis would return to Montgomery and would spend the weekend with his son at his father's house in the Montgomery area.
On February 13, 1981 the Douglasses filed a petition in the Montgomery County Juvenile Court for custody of the child. They alleged in the petition that Lewis took the boy from their home and he had not advised them of the child's whereabouts. They also alleged that the child, while in his father's care, was being exposed to the handling of an illegal drug. The court on February 25, 1981 granted temporary legal custody of the child to the Montgomery County Department of Pensions and Security (DPS) and set a hearing on the matter for April 1, 1981. Physical custody of the child was placed with the maternal grandparents. Lewis filed petitions to modify or set aside the court's order. The petitions were denied. The father then filed a motion for a DPS investigation and home study of him. This motion was granted and the father was given visitation privileges.
The parties on March 31, 1981 entered into a settlement agreement which stated that the parties shall share the permanent care, custody and control of the child. The child was to reside with the Douglasses during the school year and his father during the summer, AEA holidays, and one week during Christmas vacation. Visitation rights were also given to both parties. This agreement was ratified by a court order on April 2, 1981.
In the latter part of May 1981, Lewis took the child to Florida for the boy's summer visitation. Soon thereafter Lewis began child custody proceedings in Florida.
The grandparents filed in July 1981 a citation for contempt and petition to clarify the court's order of April 2. They alleged that the father had not cooperated with the visitation rights provision of the decree. The court set a hearing date and ordered that Lewis deliver the child to the court. Lewis did not appear at the hearing. The court held Lewis in contempt for his failure to appear and deliver the minor child to the court.
On December 5, 1981 Lewis moved for a stay of all Alabama proceedings until the resolution of a jurisdictional question in the Florida custody proceedings. The stay was granted. On January 12, 1982 the Florida *Page 1075 
court decided that it lacked jurisdiction to determine the custody of the child. The father appealed this decision in Florida. Lewis was later ordered by the Florida court to deliver the child on April 26, 1982 to the Montgomery County DPS. The father moved to stay this order so that his son could complete the school year in Florida. After a hearing on the motion, the motion was denied. On May 5, 1982, the date the stay was denied, Lewis filed a petition in Alabama for modification of the custody decree. In his petition he alleged a material change in circumstances and asked for sole custody of the child. An ore tenus hearing on the issue of modification was held. Depositions were offered at the hearing. On August 4, 1982 the court found Lewis in contempt and determined that there was insufficient proof of a material change in circumstances that would justify granting the relief he asked for. The court did specifically set out in the order the periods of visitation and custody and required Lewis to post a performance bond prior to his exercise of visitation or custody privileges to insure his compliance with the decree. The court ordered the father to pay $5,000 to the grandparents for expenses they incurred in litigation after the April 2, 1981 decree.
The father appeals and claims that the trial court erred by not granting to him full custody of the child. He argues that the trial court misapplied the law to the facts and therefore the ore tenus standard of review does not apply in this case. Lewis, relying on Mathews v. Mathews, 428 So.2d 51
(Ala.Civ.App.), writ denied, 428 So.2d 58 (Ala. 1982), asserts that a natural parent has a prima facie right to custody of his child, as against the custody of a nonparent. This presumption that the child's best interests will be served if he is in the custody of a natural parent is very strong. Absent evidence of a voluntary forfeiture of the right to custody, which the father argues is lacking in this case, the presumption will be overcome only upon a finding that the parent seeking custody is guilty of such neglect or misconduct as to render that parent an unfit and improper custodian of the child. Mathews v.Mathews, supra. The father states the burden was upon the grandparents to prove by clear and convincing evidence that the presumption of the natural parent's right to custody should be overcome. Pendergrass v. Watkins, 383 So.2d 851 (Ala.Civ.App. 1980). Hence, the Douglasses failed to meet their burden.
We disagree with the husband's contention that the trial court misapplied the law. The strong presumption favoring the natural parent as custodian applies to an initial custody determination, which in this case was reached on April 2, 1981 when the trial court ratified the parties' custody agreement. We find no authority for applying this presumption when a noncustodial parent is seeking modification of the prior custody decree. See Simpson v. Gibson, 420 So.2d 782
(Ala.Civ.App. 1982); Chandler v. Manning, 411 So.2d 160
(Ala.Civ.App. 1982). Furthermore, as set out in Mathews, the presumption is overcome when the right to custody was voluntarily forfeited. The father forfeited his right to full custody of the child when he entered into the joint custody agreement with the Douglasses.
A party seeking modification of a child custody decree has the burden of showing a material change in circumstances which adversely affects the welfare of the child. Pons v. Phillips,406 So.2d 932 (Ala.Civ.App.), cert. denied, 406 So.2d 935 (Ala. 1981). "The petitioner's burden of proof in custody modification is a heavy one in that (1) the original decree is presumed correct, (2) there must be a substantial reason for the change, and (3) the surrounding circumstances must affect the welfare of the child." Cheatham v. Cheatham, 403 So.2d 250
(Ala.Civ.App. 1981) (citations omitted). Lewis argues that he proved a material change in circumstances and thus the decree should have been modified. The father asserts that in the year his son lived with him in Florida, the boy made good grades in school. Once the child was returned to Montgomery his grades declined. Testimony was presented that Lewis was a good *Page 1076 
father and the boy should be with his father.
We note that the primary consideration in ruling on a motion for change of custody is the best interests of the child. Kiethv. Kieth, 380 So.2d 889 (Ala.Civ.App. 1980). Whether the child custody decree is to be modified is a matter vested in the trial court's discretion. When testimony is taken ore tenus, as in this case, it is presumed the judgment is correct and will not be disturbed on appeal unless the judgment is so unsupported by the evidence as to be an abuse of discretion.Jenkins v. Jenkins, 395 So.2d 1045 (Ala.Civ.App. 1981). Testimony was presented as to the husband's prior and present involvement with an illegal drug. Testimony was also presented that Lewis had a live-in female companion. In view of this testimony and all the other testimony in the record, we cannot say that the trial court abused its discretion by not modifying the custody decree.
Lewis also argues, in essence, that the trial court erred by making an award to the grandparents for litigation expenses. On July 26, 1982 the Douglasses filed a prayer for specific relief in which they requested, among other things, that Lewis be held in contempt and that he "be required to reimburse the maternal grandparents for all costs, expenses and attorneys' fees they have incurred from May 23, 1981 up to and including the present date, including but not limited to the Alabama contempt of court proceedings, the Florida proceedings at the trial level and appellate level; and including the Alabama appellate proceedings and this hearing." The evidence showed that the grandparents had expended in excess of $11,000 in fees and expenses in the protracted litigation relative to securing the return of their grandchild. The trial court stated in its decree that "[t]he natural father shall pay to the maternal grandparents the sum of $5,000 which reflects a portion of their fees and expenses incurred relative to the protracted litigation since this Court's Order of April 2, [1981] . . . ."
This court, relying on Lightsey v. Kensington Mortgage Finance Corp., 294 Ala. 281, 315 So.2d 431 (1975), recognized in Smith v. Smith, 365 So.2d 88 (Ala.Civ.App. 1978), that a trial court could assess damages in favor of an aggrieved party in civil contempt proceedings.
We consider that the trial court did award damages to the grandparents when it awarded them "the sum of $5,000 which reflects a portion of their fees and expenses relative to the litigation." We find no error here.
The judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.
ON APPLICATION FOR REHEARING OPINION MODIFIED.
APPLICATION FOR REHEARING OVERRULED.
WRIGHT, P.J., and HOLMES, J., concur.